PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.                                            No. 06-4836

ARTHUR LEON BREWER,
                *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:06-cr-00110)

Argued: November 2, 2007

Decided: March 20, 2008

Before NIEMEYER and KING, Circuit Judges, and
James A. BEATY, Jr., Chief United States District Judge
for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Niemeyer and Judge Beaty joined.

## COUNSEL

**ARGUED:** Meghan Suzanne Skelton, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Bal-
timore, Maryland, for Appellant. Richard Daniel Cooke, Special
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON**

**BRIEF:** Michael S. Nachmanoff, Acting Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Dennis Fitzpatrick, Assistant United States Attorney, Martha Pacold, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

## OPINION

KING, Circuit Judge:

Arthur Leon Brewer appeals from his sentence of seventy months in prison, imposed in the Eastern District of Virginia on his 2006 conviction for distributing more than five grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1). On appeal, Brewer, who is mentally handicapped, contends that the district court erred by, inter alia, denying him a downward departure based on diminished capacity and imposing a sentence that is unreasonable.[1] As explained below, we reject each of these contentions and affirm.

### I.

### A.

Brewer is thirty-nine years old and suffers from a rare genetic disorder called Anhidrotic Ectodermal Dysplasia. This disorder prevents a person from maintaining a regular body temperature and causes high fevers, particularly during childhood. It also results in damage to bodily structures such as hair, skin, nails, and teeth. Brewer suffers from these symptoms and does not have sweat glands, hair, teeth, eye-

---

[1] In connection with his unreasonableness contention, Brewer argues that Amendment 706, the Sentencing Commission's recent revision to the Guidelines concerning crack offenses, applies to his sentence and mandates a remand for resentencing. As explained further in Part II.B.2, because the Sentencing Commission made Amendment 706 retroactive, the sentencing court possesses ample authority to consider this argument, and we neither resolve the issue nor remand.

brows, or eyelashes. Brewer is also mentally retarded, likely a complication of the high fevers he endured as a child. A late-childhood IQ test, performed in 1981, indicated that Brewer had a Wechsler Full Scale IQ of 73, a Verbal IQ of 69, and a Performance IQ of 81. During childhood, he was diagnosed with Attention Deficit Hyperactivity Disorder, which was treated with medication.

Brewer completed a full program of special education studies through the Arlington County, Virginia public school system, graduating in 1985. Following high school, Brewer ran afoul of the law. In March 1987, he was arrested for possession of cocaine and received two years probation. In September 1987, Brewer was arrested for distributing phencyclidine (PCP) and, on February 5, 1988, received a ten-month sentence. On September 27, 1988, soon after his release from the PCP sentence, Brewer killed a man who had allegedly harassed the child of one of Brewer's friends. He was apprehended two days later, and later convicted of second degree murder, possession and distribution of cocaine, possession of a firearm while possessing cocaine, and use of a firearm in the commission of a felony. After these convictions, Brewer underwent a court-ordered psychological evaluation, which again included an IQ test. The results of this 1989 IQ test were essentially the same as his childhood test. His Wechsler Full Scale IQ was 73, his Verbal IQ was 69, and he had a Performance IQ of 79.[2] The evaluation noted that Brewer had limited insight into social situations and had poor short-term memory. It concluded that "Mr. Brewer is verbally functioning within the Mild range of mental retardation and that his non-verbal abilities are basically within the Borderline range. He does show some potential for functioning as high as the Average range." J.A. 91.[3]

In July 1989, Brewer was sentenced to thirty years on his 1988 offenses. While incarcerated in Virginia, he underwent yet another psychological evaluation.[4] This evaluation, prompted by Brewer's

---

[2]Brewer's 1981 and 1989 test results are based on the Wechsler Adult Intelligence Scale-Revised (WAIS-R).

[3]Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.

[4]While incarcerated, Brewer also developed a friendship with a man named Karim Akbah, who took Brewer under his wing. In gratitude for

reported depression and a suicide attempt, noted low cognitive functioning, lack of concrete thinking, and attempts to compensate for these deficiencies. Brewer was paroled by the Virginia authorities in the summer of 2005, after serving approximately seventeen years. Upon release, he moved in with his sister and secured two part-time jobs — as a maintenance worker at a Bennigan's restaurant and as a cook at a Food Lion deli. Brewer's sister reported that he had difficulty dealing with the changes in his life after so long in prison. He began to report auditory hallucinations and, due to these difficulties, Brewer's family tried to secure support services. In 2005, Brewer again had a psychological evaluation, using the most recent Wechsler scales, which reflected a Full Scale IQ of 59, a Verbal IQ of 64, and a Performance IQ of 60.[5] The accompanying report concluded that Brewer was mildly mentally retarded.

While working at the Food Lion, Brewer became reacquainted with a high school friend named Denise. According to Brewer, Denise knew of Brewer's impairment and began giving him advice and explaining matters that were difficult for him — such as cell phones and bank transactions. Brewer contends that Denise eventually persuaded him to sell crack and assured him that such activities carried no risk. Brewer trusted Denise, and thought that she was acting in his best interests.

On October 26, 2005, Brewer sold 2.8 grams of crack to an undercover detective in Alexandria, Virginia. A week later, he sold the same detective 3.5 grams of crack. Brewer made four additional crack sales to the detective in November and December 2005, in the following amounts: 5.4 grams, 3.6 grams, 10.6 grams, and 6.8 grams. Remarkably, Brewer charged the detective $320 for each of the first four crack sales and $450 for the last two sales.

---

kind treatment (and not due to any religious conversion), Brewer apparently changed his name to Bilal Abdur Rahman Brewer. Although this name sometimes appears in the record, Brewer does not use it currently. We refer to him simply as Brewer.

[5]These 2005 test results are based on the Wechsler Adult Intelligence Scale — Third Edition (WAIS-3). The record is unclear on whether Brewer's lower IQ test scores in 2005 reflect a decline in his cognitive functioning since 1989, result from revisions to the test, or perhaps both.

## B.

In March 2006, Brewer was charged in the Eastern District of Virginia, by way of a criminal information, with a single count of unlawful distribution of five grams or more of crack, in violation of 21 U.S.C. § 841(a)(1). Brewer waived his right to indictment and pleaded guilty to the information — without the benefit of a plea agreement — on March 28, 2006.[6]

Between his plea hearing and his sentencing proceedings, Brewer moved for a downward departure on the basis of section 5K2.13 of the Sentencing Guidelines, contending that he was suffering from diminished mental capacity at the time of the offense of conviction. The district court considered this motion at the sentencing hearing on July 21, 2006, and recognized that "Mr. Brewer's well-documented mental retardation, including his IQ scores ranging from 59-73, qualifies him as having a diminished mental capacity." J.A. 154. The court observed that it was

> inclined to conclude that the defendant's mental retardation may have in some way caused him to engage in the instant criminal conduct. His impaired ability to make social judgments and his reliance on others to make decisions makes him a prime target for drug dealers, which could have occurred in this case.

*Id.* at 154-55. The court, however, ultimately was "unwilling to find that Mr. Brewer does not pose a danger to society, a necessary finding for utilizing § 5K2.13 as the vehicle for a downward departure." *Id.* at 155. In so ruling, the court emphasized that Brewer's own evidence shows that he is "impulsive and a follower," and that "admission, alone, is sufficient justification to deny the motion." *Id.* Finally, the court relied on Brewer's extensive criminal history, which began when he was twenty years of age.

---

[6]During the plea colloquy, the district court thoroughly inquired on whether Brewer understood the proceedings and the implications of his guilty plea. There is no dispute concerning Brewer's capacity to knowingly and intelligently waive indictment and plead guilty.

Utilizing the 2005 edition of the Sentencing Guidelines, the court calculated Brewer's offense level as 25, his criminal history category as III, and his advisory sentencing range as seventy to eighty-seven months. The court then imposed a sentence of seventy months, concluding, after considering the § 3553(a) factors, that:

> this sentence reflects the seriousness of the offense and promotes respect for the law, punishment, and deterrence from the crime, and also because of [Brewer's] prior record[,] protect[s] the public from further crimes.

J.A. 160. Brewer filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## A.

In pursuing his first contention of error, Brewer maintains that the district court erred in denying his motion for a downward departure, pursuant to section 5K2.13 of the Sentencing Guidelines, on the basis of diminished capacity. Such a downward departure "may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." USSG § 5K2.13.[7] Nevertheless, "the court may not depart below the applicable guideline range if . . . the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." *Id.* As noted, the sentencing court found that Brewer's "well-documented mental retardation . . . . [q]ualifies him as having a diminished mental capacity," J.A. 154, and that "the defendant's mental retardation may have in some way caused him to engage in the instant criminal conduct," *id.* at 154-55. The court declined to grant a downward departure based on diminished capac-

---

[7]A "[s]ignificantly reduced mental capacity" means that a defendant, "although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrong." USSG § 5K2.13, cmt. n.1.

ity, however, because it was "unwilling to find that Mr. Brewer does not pose a danger to society, a necessary finding for utilizing § 5K2.13 as the vehicle for a downward departure." *Id.*

We lack the authority to review a sentencing court's denial of a downward departure unless the court failed to understand its authority to do so. This legal principle has been well settled for some time, and was not disturbed by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Bayerle*, 898 F.2d 28, 30-31 (4th Cir. 1990) (concluding that refusal to depart downward is not reviewable unless court mistakenly believed it lacked authority to depart); *see also United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007) (declining to disturb court's post-*Booker* sentence where court understood ability to depart but declined to exercise such authority). Our position on this issue is consistent with the decisions of other courts of appeals that have addressed it. *See United States v. Cooper*, 437 F.3d 324, 332 -33 (3d Cir. 2006) (joining decisions from First, Sixth, Eighth, Tenth and Eleventh Circuits declining to review sentencing court decisions to deny downward departures post-*Booker*).

Importantly, at Brewer's sentencing hearing, the court recognized "at the outset that the Court realizes that it can depart upwards or downwards in a given case depending on the law and circumstances." J.A. 153. The court then evaluated whether a downward departure for diminished capacity, as contemplated by section 5K2.13, was appropriate in Brewer's situation — ultimately concluding that it was not. Because the sentencing court understood its authority, but declined to exercise it on the facts of this case, we are unable to review its decision to deny a downward departure.[8]

---

[8]Brewer also contends on appeal that the mandatory minimum of five years (sixty months), applicable to him pursuant to 21 U.S.C. § 841(b)(1)(B), is unconstitutional under the Eighth Amendment's cruel and unusual punishment clause. This is so, Brewer asserts, because the Supreme Court has recognized that mentally retarded offenders are less culpable than average offenders. For this contention, Brewer relies principally on the Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002) (concluding that capital punishment of mentally retarded criminals violates Eighth Amendment). Brewer, however, was sentenced to seventy months, the bottom of his advisory Guidelines range, based on the district court's analysis of the 18 U.S.C. § 3553(a) factors. In these circumstances, Brewer's Eighth Amendment assertion is without merit.

B.

Brewer next contends that his sentence was greater than necessary and thus unreasonable. First, Brewer asserts that the district court gave excessive weight to the advisory Guidelines range and his criminal history when determining his sentence. Second, Brewer contends that Amendment 706 — the recent Guidelines amendment concerning crack offenses — furthers his argument that his sentence was unreasonably greater than necessary and compels us to remand. We discuss these contentions in turn.

1.

Brewer first contends that his within-Guidelines sentence of seventy months is unreasonable in light of the 18 U.S.C. § 3553(a) factors. He argues that the sentencing court erred in focusing on his prior unlawful activity — to the exclusion of the other § 3553(a) factors — in determining his sentence. Brewer also asserts that the court gave excessive weight to his advisory Guidelines range in its consideration of the § 3553(a) factors.

On appeal, we review Brewer's sentence under a deferential abuse-of-discretion standard, "first ensur[ing] that the district court committed no significant procedural error." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Such procedural error may include, inter alia, "failing to consider the § 3553(a) factors" or "failing to adequately explain the chosen sentence." *Id.* When a sentencing decision is determined to be "procedurally sound," we "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In conducting our review, we may accord a presumption of reasonableness to a sentence that falls within the properly calculated Guidelines range. *See Rita v. United States*, 127 S. Ct. 2456, 2462 (2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

At Brewer's sentencing hearing, the court properly calculated his relevant Guidelines offense level as 25, his criminal history category as III, and the resulting advisory sentencing range as seventy to eighty-seven months. The court then imposed the minimum Guide-

lines sentence of seventy months, specifying that it did so after considering the § 3553(a) factors.

Brewer contends that the court's imposition of a sentence at the bottom of the Guidelines range was unreasonable, in that it focused exclusively on his prior criminal activity. This contention is, however, factually incorrect. The court possessed and weighed the evidence of Brewer's history and personal characteristics, including his diminished capacity; considered the nature and circumstances of his offense; and took into account his criminal history, specifically as it related to the necessity of protecting the public. The court then sentenced Brewer to seventy months, at the bottom of his advisory Guidelines range. In the wake of *Rita* and *Gall*, this sentence is not unreasonable.

2.

On October 30, 2007, counsel for Brewer made a letter submission to us, pursuant to Federal Rule of Appellate Procedure 28(j), contending that the Sentencing Commission's recent crack amendments support the contention that Brewer's sentence is unreasonable. In supplemental briefing on this contention, Brewer urges us to remand to the district court for resentencing in the wake of the crack amendments.

On May 1, 2007, pursuant to 28 U.S.C. § 994(p), the Sentencing Commission submitted to Congress amendments to the Guidelines that, absent congressional action to the contrary, became effective November 1, 2007. *See* United States Sentencing Comm'n, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007) (the "2007 Report"); *see also Kimbrough v. United States*, 128 S. Ct. 558, 569 (2007) (describing Commission's amendments to Sentencing Guidelines). Amendment 706, pertaining to drug offenses involving crack, adjusts downward by two levels the base offense level assigned to each threshold quantity of crack listed in the Drug Quantity Table in section 2D1.1. *See* USSG § 2D1.1 (Nov. 1, 2007); USSG Supp. to App'x C, Amend. 706. The Commission premised Amendment 706 on its conclusion that the 100-to-1 ratio "overstate[s]" both "the relative harmfulness" of crack, and the "seriousness of most [crack] offenses." 2007 Report at 8.

On December 11, 2007, the Commission unanimously voted to make Amendment 706 retroactive, effective March 3, 2008. *See* USSG § 1B1.10(c) (Mar. 3, 2008).[9] The March 3, 2008 date having passed without any action or modification by Congress, Amendment 706 is now potentially applicable to Brewer's sentence. It is, however, for the district court to first assess whether and to what extent Brewer's sentence may be thereby affected, and that court is entitled to address this issue either sua sponte or in response to a motion by Brewer or the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(2).[10] Accordingly, we need not remand for resentencing in order for Brewer to pursue relief in the district court under Amendment 706, and we decline to do so. However, this decision is rendered without prejudice to Brewer's right to pursue such relief in the sentencing court.[11]

### III.

Pursuant to the foregoing, we reject Brewer's contentions of error and affirm.

*AFFIRMED*

---

[9]Amendment 706 was amended by Amendment 711 in ways not relevant to this appeal.

[10]Section 3582(c)(2) provides that a sentencing court may not modify a term of imprisonment after its imposition except

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

[11]To the extent that Brewer contends his sentence is unreasonable based on criticisms of the 100-to-1 crack/powder disparity contained in the Commission's 2007 Report, we need not resolve this contention. We are satisfied to have the district court determine the impact, if any, that the Commission's adoption of Amendment 706 may have on Brewer's sentence.