**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLIE EARL WINDER,

    Defendant-Appellant.

No. 07-6208

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:07-CR-0016-R-1)**

---

Dennis Caruso, Caruso Law Firm, P.C., Tulsa, Oklahoma, for Appellant.

Edward J. Kumiega, Assistant United States Attorney (John C. Richter, United States Attorney, with him on the briefs), Oklahoma City, Oklahoma, for Appellee.

---

Before **BRISCOE**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

After chasing down the van Defendant Willie Earl Winder was driving, a police officer located guns, drugs, and other paraphernalia in the vehicle. A grand jury subsequently charged Defendant with (1) possessing approximately 169.4 grams of a detectable amount of marijuana, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (2) possessing 2.39 grams of a substance containing cocaine

base, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (3) carrying two firearms during and in relation to a federal drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and (4) being a felon in possession of two firearms, in violation of 18 U.S.C. § 922(g)(1). After a two-day trial, a petit jury convicted Defendant on all counts. The district court sentenced Defendant to 324 months imprisonment; twenty-four concurrent months on Counts I, II, and IV, and a consecutive sentence of three hundred months on Count III.

Defendant now raises three issues on appeal. First, Defendant argues the district court erred in denying his motion to suppress the evidence recovered from the van. Second, Defendant suggests that the United States Sentencing Commission's retroactive two-level reduction in the United States Sentencing Guidelines' (the Guidelines) base offense levels for crack cocaine-related offenses, see United States v. Rhodes, 549 F.3d 833, 835 (10th Cir. 2008), requires that we remand for resentencing. Third, Defendant contests the sufficiency of the evidence supporting his convictions on Counts I through III. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Finding no merit to Defendant's contentions, we affirm.

I.

Consistent with our standard of review, we proceed to summarize the facts of this case in the light most favorable to the Government. See United States v. Bowen, 527 F.3d 1065, 1069 (10th Cir. 2008) (acknowledging that we "review the

2

sufficiency of the evidence in the light most favorable to the Government."); United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001) (noting that we accept the district court's factual findings "unless they are clearly erroneous" and construe the evidence in the "light most favorable" to the district court's ruling). In December 2005, Officer Justin Barton parked his patrol car, calibrated his radar gun, and proceeded to monitor the speed of adjacent traffic. A red van, driven by Defendant, approached Officer Barton's position, traveling forty-eight to forty-nine miles per hour, on a road with a posted speed limit of forty miles per hour. Local police department policy permitted Officer Barton to stop any vehicle traveling over the posted speed limit, but he was instructed not to ticket drivers traveling less than ten miles per hour over that barrier.

As the van approached, Officer Barton thought he observed Defendant slightly hunched over the wheel of his vehicle; at the same time, he was unable to locate a shoulder strap on Defendant's person. In Officer's Barton experience, a shoulder strap was visible on ninety-nine percent of drivers who leaned forward while operating their vehicles. The officer thus concluded that Defendant was not wearing his seat belt. Consequently, Officer Barton activated his patrol car's lights and began to pull onto the road behind Defendant. The van emitted a puff of smoke, associated with rapid acceleration, and began to speed away from the patrol car. Officer Barton activated his siren and proceeded to give chase. While in pursuit, Officer Barton's patrol car reached a speed of approximately one hundred miles per

hour, as he observed Defendant improperly cross lanes, and run at least one stop sign. The van eventually pulled into a trailer park — going airborne over a large speed bump near the park's entrance — and stopped when it became hemmed against a wall.

As Officer Barton began to exit the patrol car and unholster his weapon, he observed Defendant emerging from the van with a shiny object in his right hand. Officer Barton yelled for Defendant to drop the object or he would "kill him." Defendant complied by dropping the object on the floorboard of the van. Subsequently, Officer Barton handcuffed Defendant, who appeared to be intoxicated, and placed him in the back of his patrol car.

A search of the van, which smelt of burnt marijuana, uncovered a .22 caliber semiautomatic handgun on the driver's side floorboard, as well as a bottle of alcohol. In the van's interior, Officer Barton found a partially unzipped black bag, eventually determined to be a gun case, in between the front driver's and passenger's seats, as well as an empty holster, two baggies containing marijuana, one baggy containing crack cocaine, two one-dollar bills, a photograph of Defendant with a group of unknown persons, a handcuff key, ammunition, empty baggies of various sizes, a folding knife, and an electronic scale. The van's glove box contained a .22 caliber double barreled handgun, and twelve baggies containing marijuana. Subsequently, authorities located $142.97 on Defendant's person. Registration records revealed that the van Defendant was driving belonged to his wife.

4

Officer Barton booked Defendant at the local police department and read him his Miranda rights. Subsequently, Defendant agreed to speak with Officer Barton. Defendant was visibly upset after his arrest. He acknowledged that the photograph belonged to him but denied ownership of the black gun case, as well as any plans to sell the drugs in the van, explaining that they were for his personal use. When questioned about the gun Officer Barton believed he had seen in Defendant's right hand when he exited his vehicle, Defendant made a comment to the effect that, in California, he could have shot Officer Barton and no one would have missed him.

## II.

We first address Defendant's claim that the district court should have suppressed the evidence found in the van because Officer Barton's stop of Defendant's vehicle violated the Fourth Amendment's ban on unreasonable seizures. See United States v. Maddox, 388 F.3d 1356, 1361 (10th Cir. 2004) (noting that the Fourth Amendment's protection against unreasonable seizures includes "seizure of the person" and that "evidence obtained as a result of an illegal seizure is subject to the exclusionary rule"). On appeal, we consider the totality of the circumstances in reviewing a district court's suppression ruling de novo. See Williams, 271 F.3d at 1266. Ours is, however, a deferential sort of de novo review. See United States v. Santos, 403 F.3d 1120, 1124-25 (10th Cir. 2005). Not only do we accept the district court's factual findings unless they are clearly erroneous, but we also construe the evidence in the light most favorable to the district court's ruling. See Williams, 271

5

F.3d at 1266. We also defer to all reasonable inferences made by law enforcement officers in light of their professional experience. See United States v. Arvizu, 534 U.S. 266, 273-74 (2002); Terry v. Ohio, 392 U.S. 1, 27 (1968).

A.

In analyzing the constitutionality of a traffic stop under the Fourth Amendment, we apply the "reasonable suspicion" standard for investigative detentions originally set forth in Terry v. Ohio. See United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc). The Terry standard applies to our review of the reasonableness of a traffic stop "regardless of whether the stop is based on probable cause or on some lesser suspicion." United States v. Holt, 264 F.3d 1215, 1230 (10th Cir. 2001) (en banc). To justify a Terry stop the detaining officer must have, based on all the circumstances, a "particularized and objective basis for suspecting" the person stopped of "criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981).

Our analysis under Terry is two-fold. First, we ask whether an officer's stop of a vehicle was "justified at its inception." United States v. Valenzuela, 494 F.3d 886, 888 (10th Cir. 2007); see also Fuerschbach v. Sw. Airlines Co., 439 F.3d 1197, 1206 (10th Cir. 2006) (noting that this prong puts "law enforcement officers on notice that seizures without any legal justification . . . violate the Fourth Amendment"). A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable

6

articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction. See United States v. Martinez, 512 F.3d 1268, 1272 (10th Cir. 2008). For reasonable suspicion to exist, an officer "need not rule out the possibility of innocent conduct;" he or she simply must possess "some minimal level of objective justification" for making the stop. United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004). Evidence falling "considerably short" of a preponderance satisfies this standard. Arvizu, 534 U.S. at 274. Second, if a traffic stop was justified at its inception, we determine whether "the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place." Valenzuela, 494 F.3d at 888. "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop." United States v. Cervine, 347 F.3d 865, 870-71 (10th Cir. 2003).

We have long since rejected the notion that an officer's subjective motivations in effecting a stop are relevant to the Terry analysis. See, e.g., United States v. Chavez, 534 F.3d 1338, 1344 (10th Cir. 2008); Botero-Ospina, 71 F.3d at 787. Instead, we consider the reasonableness of an officer's actions using an "objective standard" that takes the "totality of the circumstances" and the "information available" to the officer into account. United States v. Sanchez, 519 F.3d 1208, 1213 (10th Cir. 2008). Under this standard, an officer's "actual motivations or subjective beliefs and intentions" are, quite simply, irrelevant. United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir. 2004). We ask, instead, whether "the facts available"

7

to the detaining officer, at the time, warranted an officer of "reasonable caution" in believing "the action taken was appropriate." Terry, 392 U.S. at 21-22; see also Banks v. United States, 490 F.3d 1178, 1183 (10th Cir. 2007) (recognizing that the "ultimate touchstone of the Fourth Amendment is reasonableness").

An officer's objectively reasonable mistake of fact may support the reasonable suspicion or probable cause necessary to justify a traffic stop. See, e.g., United States v. Herrera, 444 F.3d 1238, 1246 (10th Cir. 2006); United States v. Walraven, 892 F.2d 972, 974-75 (10th Cir. 1989). That an officer's suspicions may prove unfounded does not vitiate the lawfulness of a stop, provided the officer's error was made in good faith and is objectively reasonable under the circumstances. See Vercher, 358 F.3d at 1261. Police errors, in this context, are simply unavoidable, as reasonable suspicion involves "probabilities" rather than "hard certainties." Cortez, 449 U.S. at 418; see also Wardlow, 528 U.S. at 126 ("Terry accepts the risk that officers may stop innocent people.").

While deferential, our Fourth Amendment analysis does not allow for unwarranted government intrusions into the lives of the public. See Botero-Ospina, 71 F.3d at 788. Although an officer may effect a stop once he observes conduct that leads him "reasonably to conclude" that criminal conduct "may be afoot," termination of the encounter is required once the officer's suspicion is dispelled and probable cause fails to develop. United States v. Peters, 10 F.3d 1517, 1522 (10th Cir. 1993); see also Illinois v. Wardlow, 528 U.S. 119, 126 (2000) ("If the officer

8

does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way."). At this point, the detention is no longer reasonable, as the officer's concerns have proven illusory. See Peters, 10 F.3d at 1522. Our precedent is clear that unless the officer obtains "a new and independent basis" for suspecting the detained individual of criminal activity, his investigation must end. Id.

## B.

Defendant does not challenge the scope of his detention; rather, he argues that the officer's stop of his vehicle was not justified at its inception. An officer may initiate a traffic stop once he has "reasonable suspicion that criminal activity is, has, or is about to occur." United States v. Copening, 506 F.3d 1241, 1246 (10th Cir. 2007). In this case, the officer initiated a stop only after he acquired a "particularized and objective" basis for suspecting Defendant of criminal activity. Cortez, 449 U.S. at 417. The district court, therefore, correctly denied Defendant's motion to suppress the evidence found in the van.

Officer Barton observed Defendant speeding. See Mecham v. Frazier, 500 F.3d 1200, 1204 (10th Cir. 2007) (noting that a traffic stop was "justified at its inception" because the defendant was "speeding"). Our precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation. See, e.g., United States v. Gregoire, 425 F.3d 872, 876 (10th Cir. 2005) ("An observed traffic violation or a reasonable suspicion of such a violation under state law plainly

9

justifies a stop."). Observed traffic violations necessarily "afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained." Whren v. United States, 517 U.S. 806, 817-18 (1996). Nevertheless, Defendant contests the validity of his stop, emphasizing (1) the arresting officer's statement at trial that Defendant's speed was not his subjective reason for initiating a traffic stop, and (2) the officer was operating under a local policy instructing officers not to ticket motorists traveling less than ten miles over the speed limit.

Defendant's arguments in this regard simply miss the mark because, as we have explained, our standard for evaluating the validity of a traffic stop is objective, rather than subjective. See Gregoire, 425 F.3d at 878 ("[T]he subjective motivation of the trooper is not pertinent given the observed [traffic] violation."). Once an officer observes a traffic or equipment violation, a Terry stop is objectively justified, regardless of the detaining officer's "subjective motives." Botero-Ospina, 71 F.3d at 787. Nor is it relevant, for "purposes of Fourth Amendment review, whether the stop in question" was "ordinary or routine according to the general practice of the police department or the particular officer making the stop." Id. After the officer observed Defendant traveling eight to nine miles over the speed limit, he clearly possessed the "minimal level of objective justification" required to conduct a valid Terry stop.[1] United States v. Sokolow, 490 U.S. 1, 7 (1989).

---

[1] Once Officer Barton observed Defendant speeding, he obtained the
(continued...)

10

III.

We now turn to Defendant's contention that the Sentencing Commission's retroactive two-level reduction in the Guideline's base offense levels for crack cocaine-related offenses requires us to remand for resentencing. Defendant phrases this issue as a challenge to the procedural reasonableness of his sentence. For a sentence to be procedurally reasonable, the district court must properly calculate a defendant's Guidelines range. See United States v. Sallis, 533 F.3d 1218, 1222-23 (10th Cir. 2008).

Defendant failed to challenge the district court's calculation of his Guidelines range below. While Defendant lodged a blanket objection to the PSR, such an objection lacks the "specificity required to preserve the precise issue he raises on appeal." United States v. Bedford, 536 F.3d 1148, 1153 n.4 (10th Cir. 2008). Our precedent is clear that an objection must be "definite" enough to indicate to the district court "the precise ground" for a party's complaint. Neu v. Grant, 548 F.2d 281, 287 (10th Cir. 1977); see also id. ("The need for specific objection applies to rulings on evidence, formulation of issues for trial, arguments of counsel, submission of the case to the jury, instructing the jury and all other matters throughout the

---

[1](...continued)
reasonable suspicion necessary to effect a stop. See Mecham, 500 F.3d at 1204. We, therefore, need not decide whether Officer Barton's belief that Defendant was not wearing his seat belt also gave him the reasonable suspicion necessary to justify a stop under the Fourth Amendment.

trial."). Absent a specific objection, the district court is deprived of the opportunity to correct its action in the first instance. See id. ("The trial court is entitled . . . to be apprised of the claimed error, to consider the contention, and to correct possible error."). Accordingly, we review this issue only for plain error. See United States v. Hasan, 526 F.3d 653, 660-61 (10th Cir. 2008). Under the plain error standard, "even if a defendant demonstrates an error that is plain, we may only take corrective action if that error not only prejudices the defendant's substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rivas-Macias, 537 F.3d 1271, 1281 (10th Cir. 2008).

In this case, we are unable to locate any error, plain or otherwise. Defendant was sentenced in August 2007. Amendment 706 to the Sentencing Guidelines, which instituted a 2-level reduction in the Guideline's base offense levels for crack cocaine-related offenses, did not become retroactive until March 3, 2008. See Rhodes, 549 F.3d at 835. A court is generally required to apply the Guidelines in effect at the time a defendant is sentenced. See United States v. Sullivan, 255 F.3d 1256, 1259 (10th Cir. 2001); see also 18 U.S.C. § 3553(a)(4)(A)(ii) (stating that, in sentencing a defendant, the court shall consider the sentencing range set forth in the Guidelines that "are in effect on the date the defendant is sentenced"); U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). Thus, the district court did not err in calculating Defendant's Guidelines range without reference to the alterations made by

12

Amendment 706.

While we recognize that "a subsequent amendment to the Guidelines can sometimes be given retroactive effect if the changes are clarifying rather than substantive," the "substantial alterations" to the Guidelines wrought by Amendment 706 are clearly substantive. United States v. Aptt, 354 F.3d 1269, 1276 (10th Cir. 2004). As the Third Circuit aptly noted, "a post-sentencing amendment reducing the base offense level applicable to a particular offense is a substantive change and is therefore not applied retroactively to cases on appeal." United States v. Wise, 515 F.3d 207, 220 (3d Cir. 2008). Because the district court correctly calculated Defendant's Guidelines range using the Guidelines in effect at the time of his sentencing, we reject Defendant's challenge to the procedural reasonableness of his sentence.

We also decline to remand for resentencing in light of the Sentencing Commission's retroactive application of Amendment 706. See United States v. Brewer, 520 F.3d 367, 373 & n.11 (4th Cir. 2008). Congress has vested the district court with the power to assess "whether and to what extent" Defendant's sentence has been affected by the Amendment, "either sua sponte or in response to a motion" by Defendant or the Director of the Bureau of Prisons. Id. at 373; see also 18 U.S.C. § 3582(c)(2). Defendant is thus free to move the district court to reduce the term of his imprisonment under 18 U.S.C. § 3582(c)(2). Consistent with the statutory scheme, we leave it to the district court to assess the ramifications, if any, of

13

Amendment 706 on Defendant's sentence.  See United States v. Sharkey, 543 F.3d 1236, 1239 (10th Cir. 2008) (noting that a reduction is only authorized under 18 U.S.C. § 3582(c)(2) if it has "the effect of lowering the defendant's applicable guideline range"); United States v. Dorrough, 84 F.3d 1309, 1311 (10th Cir. 1996) (noting that the "retroactive application of a change in the offense level of the Sentencing Guidelines . . . falls within the district court's discretion").

IV.

Finally, we address the sufficiency of the evidence supporting Defendant's convictions on Counts I, II, and III.  Our review of the sufficiency of the evidence supporting a criminal conviction is de novo.  See Bowen, 527 F.3d at 1075.  The scope of our inquiry is limited to determining whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, if it viewed all the evidence, as well as all reasonable inferences drawn from that evidence, in the light most favorable to the Government.  See id. at 1076.  On appeal, we do "not assess the credibility of witnesses or weigh conflicting evidence, as these tasks are exclusively for the jury." Id.  Instead, we merely determine whether a rational trier of fact could have found "the essential elements of the crime beyond a reasonable doubt." Id.

A.

Counts I and II charge Defendant with possessing the drugs found in the van with the intent to distribute them in violation of federal law.  See 21 U.S.C. § 841(a)(1).  We proceed to consider jointly the sufficiency of the evidence

14

supporting Defendant's convictions on these counts.

1.

The crime of possessing a controlled substance with the intent to distribute has three elements: (1) possession, (2) knowledge, and (3) the intent to distribute. See United States v. Delgado-Uribe, 363 F.3d 1077, 1084 (10th Cir. 2004). A defendant's "possession" of a controlled substance may be either actual or constructive. See id. Where joint occupancy is not an issue, the Government may establish constructive possession merely by showing the Defendant had "dominion or control over the narcotics and the premises" where the narcotics were found. United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000); see also United States v. McCullough, 457 F.3d 1150, 1168 (10th Cir. 2006) (defining constructive possession as "an appreciable ability to guide the destiny of the drug").

A jury "may – and often must – consider circumstantial evidence" in determining whether the Government has established the elements of a 21 U.S.C. § 841(a)(1) offense. United States v. Nickl, 427 F.3d 1286, 1301 (10th Cir. 2005). In considering whether the Government's evidence is sufficient to support the jury's verdict, we remain mindful that circumstantial evidence is entitled to the "same weight" as direct evidence. United States v. Brunson, 907 F.2d 117, 119 (10th Cir. 1990). To sustain a criminal conviction, the Government's evidence must be "substantial" or raise more than a "mere suspicion of guilt," but it need not disprove every other reasonable theory of the case. United States v. Caraway, 534 F.3d 1290,

15

1293 (10th Cir. 2008); see also United States v. Kaufman, 546 F.3d 1242, 1263 (10th Cir. 2008) ("[T]he evidence presented need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.").

2.

Defendant does not dispute that he possessed and had knowledge of the drugs found in the van he was driving at the time of his arrest. Rather, Defendant maintains the Government presented insufficient evidence to prove his intent to distribute these drugs beyond a reasonable doubt. For the following reasons, we disagree.

Our cases recognize that certain items are commonly regarded as tools of the drug trade. See, e.g., United States v. Burkley, 513 F.3d 1183, 1189 (10th Cir. 2008) (noting that firearms, scales, and large sums of cash are tools of the drug trade); United States v. Triana, 477 F.3d 1189, 1195 (10th Cir. 2007) (describing scales, glass pipes, and plastic baggies as "tools of the drug trade"); United States v. Hall, 473 F.3d 1295, 1304 (10th Cir. 2007) (listing firearms, large sums of cash, scales, and uncharged quantities of illegal drugs as tools of the drug trade); United States v. Verners, 53 F.3d 291, 297 (10th Cir. 1995) (regarding laboratory equipment, scales, guns, ammunition, packaging materials, and profits as tools of the drug trade). Authorities located a number of these items in Defendant's van, including (1) two firearms, (2) ammunition, (3) baggies containing drugs packaged for individual sale, (3) empty baggies of varying sizes, and (4) a digital scale. All of

16

this evidence suggests Defendant was engaged in the distribution of illegal drugs.

The Government also presented evidence indicating, more generally, that Defendant was involved in criminal activity. Defendant's "intentional flight" from a police officer certainly serves as "circumstantial evidence" of his guilt. United States v. Cui Qin Zhang, 458 F.3d 1126, 1128 (10th Cir. 2006). Moreover, expert testimony presented at trial established not only that officers rarely find motorists with handcuff keys in their vehicles, but that criminals use such keys to escape police custody. See, e.g., United States v. Depew, 977 F.2d 1412, 1413 (10th Cir. 1992) (describing a prisoner's attempt to escape custody using a handcuff key); United States v. Fritz, 580 F.2d 370, 371-72 (10th Cir. 1978) (detailing a prisoner's escape using a handcuff key hidden underneath his false teeth). Taken together, we conclude the Government's evidence was sufficient for the jury to conclude that Defendant intended to distribute the drugs found in the van.

## B.

Defendant also challenges the sufficiency of the evidence supporting his conviction on Count III. See 18 U.S.C. § 924(c)(1)(A). Section 924(c) mandates an additional five years of imprisonment for any person who "uses" or "carries" a firearm during and in relation to a federal drug trafficking crime, as well as for anyone who "possesses" a firearm in furtherance of any such crime. See Bowen, 527 F.3d at 1072. Count III charges Defendant with "carrying" two firearms during and in relation to such an offense. A defendant receiving a "second or subsequent

17

conviction" under § 924(c) must be sentenced to a mandatory minimum of no less than twenty-five years imprisonment.  18 U.S.C. § 924(c)(1)(C).

1.

To establish a § 924(c) "carry" violation, the Government must prove a defendant (1) possessed a firearm through the exercise of dominion and control, and (2) transported or moved that firearm (3) during and in relation to a federal drug trafficking offense.  See United States v. Lampley, 127 F.3d 1231, 1240 (10th Cir. 1997).  The "during and in relation to" element requires the Government to establish a "direct nexus between the defendant's carrying of a firearm and the underlying drug crime."  Burkley, 513 F.3d at 1189; see also Smith v. United States, 508 U.S. 223, 238 (1993) (explaining that the "firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence").  This element is satisfied if the defendant "intended the firearm to be available for use" in the underlying offense.  Burkley, 513 F.3d at 1189-90.  The Government may establish such intent by demonstrating "a close proximity between the firearm and the drugs."  Id. at 1190.

In general, § 924(c) serves to discourage "the dangerous combination of drugs and guns."  United States v. Lindsey, 389 F.3d 1334, 1338 (10th Cir. 2004).  Given this essential purpose, courts have construed § 924(c)'s "carry" provision to apply to those who knowingly possess and convey "firearms in a vehicle," even if the firearm is placed in the "locked glove compartment or trunk of a car."  Id.  While a

18

defendant's carrying of a firearm must be directly connected to an underlying drug trafficking offense to satisfy the strictures of § 924(c), we do not require that a defendant's drug dealing activities serve as the *only* reason for his possession of the gun. See Burkley, 513 F.3d at 1190; see also id. ("There is no requirement . . . that the drug trafficking crime be the sole reason for the possession of the gun.").

2.

Defendant disputes the sufficiency of the evidence supporting his conviction for carrying a firearm during and in relation to a drug trafficking crime on two separate grounds. First, he reasserts his argument concerning the insufficiency of the evidence supporting his predicate convictions on Counts I and II. As we have already rejected this contention, see Part IV.A.2, we will not address it further. Second, Defendant suggests the Government's evidence failed to prove that he carried the firearms at issue "during and in relation to" his drug dealing activities.

In this case, Defendant attempted to elude a police officer in a van containing two firearms and a quantity of drugs. The arresting officer found the first gun on the van's floorboard after ordering Defendant to drop a shiny object. Two baggies of marijuana and one baggy of cocaine were also sitting in the interior of the van. The second gun was located in the van's glove box, along with twelve baggies of marijuana. We conclude that this evidence was more than sufficient to support Defendant's § 924(c) conviction.

19

Defendant undoubtedly carried the firearms in question by "knowingly possessing and transporting them in his vehicle." Burkley, 513 F.3d at 1190. Substantial evidence also supports the conclusion that Defendant carried the guns "during and in relation to" a predicate drug trafficking offense. At the very least, Defendant's ready access to the guns and their "proximity" to the drugs in the van demonstrated that Defendant intended the firearms to be "available for use in the offense." Id. Firearms are, after all, often used by drug dealers to protect merchandise and cash, as well as to intimidate prospective purchasers. See id. The jury was also entitled to conclude that Defendant exited the van with a firearm in his hand. Such an act is strong evidence of Defendant's willingness to carry a gun to "deter interference" with his drug dealing pursuits. Banks, 451 F.3d at 726. We have repeatedly recognized that "carrying a gun to deter interference with a drug trafficking crime is done during and in relation to the crime." Id.; see also United States v. Brown, 400 F.3d 1242, 1250-51 (10th Cir. 2005). Consequently, Defendant's § 924(c) conviction must stand.

AFFIRMED.