FILED
United States Court of Appeals
Tenth Circuit

November 19, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENTRIEL DEJUAN THOMPSON,

    Defendant - Appellant.

No. 13-6195
(D.C. No. 5:12-CR-00102-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

After the district court denied his motion to suppress, Kentriel Dejuan Thompson

entered a conditional plea of guilty to one count of being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1), reserving his right to appeal from the

district court's denial of the motion to suppress. Over defense counsel's objection, the

district court sentenced Thompson pursuant to the Armed Career Criminal Act (ACCA),

18 U.S.C. § 924(e)(1), imposing a 240-month prison sentence and five years of

supervised release. Thompson appeals, claiming the district court committed reversible

error in denying his motion to suppress and in sentencing him pursuant to the ACCA.

_____

[*]     This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 7:30 P.M. on February 18, 2012, Master Sergeant Mark Teachman was patrolling the northeast quadrant of Oklahoma City when he witnessed a black male, the driver and sole occupant of a black Buick LaCrosse, make a right-hand turn without signaling. Teachman pursued the Buick but briefly lost sight of it before locating what appeared to be the same vehicle, with its headlights still on, parked less than a block from where the traffic infraction had occurred. Teachman approached the driver's side of the vehicle on foot and rapped on the driver's window, but received no response. He then opened the door and found Kentriel Dejuan Thompson sitting in the driver's seat. Thompson, who was unable to produce a driver's license, was alone in the vehicle, and Teachman saw no one else in the vicinity.

Intending to arrest Thompson for driving without a license, Teachman thrice ordered Thompson out of the Buick. When Thompson, who was "getting fidgety and nervous," refused to comply, Teachman removed him from the vehicle and initiated a pat-down search. During the search, he felt what he believed to be a gun in Thompson's pocket. Without informing Thompson of his *Miranda*[1] rights, Teachman asked Thompson what the item was, and Thompson confirmed it was a gun. Teachman seized the firearm, placed Thompson in handcuffs, and seated him in the backseat of his patrol car.

_____

[1] *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S. Ct. 1602, 1620, 16 L. Ed. 2d 694 (1966).

2

After he was indicted for one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Thompson moved to suppress both the gun and his statement. He argued Teachman's version of the events lacked credibility, Teachman lacked reasonable suspicion to stop and search Thompson, and Teachman failed to inform Thompson of his *Miranda* rights before questioning him.

At the hearing on the motion, Teachman doggedly asserted that despite the time of year, it had been light enough outside at 7:30 P.M. to permit him to see the driver's face through the windshield of the Buick and to later recognize Thompson as that driver. Teachman also testified the keys to the Buick were in the vehicle at the time of the stop, a fact corroborated by the impounding wrecker service but disputed by three of Thompson's witnesses.

Collectively, these witnesses maintained that Thompson's acquaintance, Horatio Coates, had been driving the vehicle immediately before the stop and removed the keys from the vehicle after parking it; that Thompson had only entered the parked vehicle in order to retrieve a cigar from its center console; and that Coates never relinquished the keys to law enforcement or to the wrecker service during the encounter.

Although the district court rejected Teachman's testimony that it had been light enough outside to allow him to see the driver of the Buick and to subsequently identify Thompson as that individual, it accepted most of Teachman's remaining testimony. Based on GPS information from Teachman's patrol vehicle, the district court also accepted the Government's argument that only moments elapsed between Teachman's witnessing of the traffic infraction and his finding Thompson seated alone in the driver's

3

seat of the Buick. The district court ultimately denied Thompson's motion to suppress, finding reasonable suspicion to support the initial stop and the subsequent pat-down search, and finding Thompson's statement regarding the gun in his pocket admissible under the public safety exception to the *Miranda* requirement.

Thompson subsequently entered a conditional plea of guilty to one count of being a felon in possession of a firearm, but reserved the right to appeal from the district court's denial of his motion to suppress. Over defense counsel's objection, the district court sentenced Thompson pursuant to the ACCA, and imposed a 240-month prison sentence. Thompson appeals.

We conclude Teachman (1) had reasonable suspicion to stop Thompson; (2) did not exceed the scope of that stop by requesting Thompson's driver's license; (3) had probable cause to arrest Thompson, justifying a search incident to arrest; and (4) was not required to inform Thompson of his *Miranda* rights before questioning him during the search about what appeared to be a gun in his pocket. Thus, we affirm the district court's denial of Thompson's motion to suppress. Finding no error in the district court's application of the ACCA, we also affirm Thompson's sentence.

## DISCUSSION

Thompson first argues the district court erred in denying his motion to suppress. In reviewing the district court's denial of that motion, we consider the evidence in the light most favorable to the Government, accept the district court's findings unless they are clearly erroneous, and exercise unlimited review over the "ultimate determination of the reasonableness of a search under the Fourth Amendment." *United States v. Garcia*,

4

751 F.3d 1139, 1142 (10th Cir. 2014). A district court's findings are clearly erroneous only if they are without support in the record, or if, after reviewing the evidence, we are "left with a definite and firm conviction that a mistake has been made." *Plaza Speedway, Inc. v. United States*, 311 F.3d 1262, 1266 (10th Cir. 2002) (internal quotation marks and citation omitted).

*The Stop*

"In analyzing the constitutionality of a traffic stop under the Fourth Amendment, we apply the 'reasonable suspicion' standard for investigative detentions originally set forth in *Terry v. Ohio*, [392 U.S. 1, 27 (1968)]." *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009). An investigative detention is based on reasonable suspicion if the detaining officer has "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

Thompson maintains that because the district court rejected *some* of Teachman's testimony at the hearing on the motion to suppress, it clearly erred in failing to reject *all* of his testimony, including Teachman's claim that he witnessed a traffic infraction. As factfinder, however, the district court could accept or reject any portion of Teachman's testimony. *See Holt v. Deere & Co.*, 24 F.3d 1289, 1295 (10th Cir. 1994) ("As sole judges of the witnesses' credibility, the jurors were entitled to accept or reject the testimony of any witness in whole or in part."). Although the district court rejected some of Teachman's testimony, it rejected only that part of his testimony that was illogical, *i.e.*,

5

Teachman's claim that there was sufficient "daylight" at 7:30 P.M. on February 18, 2012[2] to permit him to identify the driver of the Buick. While the district court rejected this claim as "doubtful," it did not clearly err in crediting Teachman's remaining testimony, which was not similarly implausible. *See Holt*, 24 F.3d at 1295.

Alternatively, Thompson argues that even accepting Teachman's remaining claims as true, Teachman lacked reasonable suspicion to stop him. Although Thompson's "temporal and geographic proximity to the crime *alone*" was insufficient to give rise to reasonable suspicion to support the stop, we may consider those factors in our reasonable-suspicion analysis. *See Romero v. Story*, 672 F.3d 880, 887 (10th Cir. 2012) (italics in original). *See also United States v. Goodrich*, 450 F.3d 552, 553-54, 562 (3d Cir. 2006) (affirming finding of reasonable suspicion to stop vehicle one or two blocks from reported theft when there were no other occupied vehicles in the area and officers responded within seven minutes of the initial report); *United States v. Fisher*, 597 F.3d 1156, 1157, 1159 (10th Cir. 2010) (citing defendant's presence in lone car at scene of recent shooting as sufficient to establish reasonable suspicion).

---

[2] According to the website of the United States Naval Observatory (www.usno.navy.mil), the sun set at 6:15 P.M. in Oklahoma City on February 18, 2012, and civil twilight ended at 6:41 P.M. "[A]fter the end of civil twilight, artificial illumination is normally required to carry on ordinary outdoor activities." http://aa.usno.navy.mil/faq/docs/RST_defs.php. We take judicial notice of this fact. *See Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) ("[T]he kinds of things about which courts ordinarily take judicial notice" include "scientific facts: for instance, when does the sun rise or set"); *Delaware, L. & W.R. Co. v. Koske*, 279 U.S. 7, 12, 49 S. Ct. 202, 73 L. Ed. 578 (1929) ("The [C]ourt takes judicial notice of the fact that for some weeks immediately before the accident the sun rose and it was light for some time before plaintiff's quitting hour.").

Viewing the evidence in the light most favorable to the Government, as we must, we conclude the district court did not err in finding Teachman possessed a particularized and objective basis to suspect the individual sitting in the driver's seat of the Buick had committed a crime. Teachman encountered the black Buick LaCrosse within moments of witnessing the driver and sole occupant of a black Buick LaCrosse commit a traffic infraction. The stop occurred less than a block from the location where the infraction occurred, there was no one else in the area at the time of the stop and no one else in the car. Any reasonable police officer in Teachman's position would have had a particularized and objective basis for detaining Thompson's vehicle, even without knowledge that Thompson matched the general description of the individual Teachman witnessed committing a traffic infraction. *See Fisher*, 597 F.3d at 1159. Therefore, the stop was valid at its inception.

*The Scope*

Next, Thompson argues Teachman exceeded the scope of the stop when he immediately requested Thompson's driver's license instead of asking whether Thompson had been driving the Buick at the time of the traffic infraction. According to Thompson, this violated Teachman's obligation, under *Florida v. Royer*, 460 U.S. 491, 498, 500 (1983), to use the "least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."

Even if we consider this argument, which Thompson raises for the first time on appeal, *Royer* does not stand for the proposition that the "reasonableness of the officer's decision to stop a suspect … turn[s] on the availability of less intrusive investigatory

7

techniques." *United States v. Sokolow*, 490 U.S. 1, 11 (1989). Instead, the Court's statement in *Royer* "was directed at the *length* of the investigative stop, not at whether the police had a less intrusive *means* to verify their suspicions before stopping" the defendant. *Sokolow,* 490 U.S. 1 at 11. (Emphasis added). *See also Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995) ("We have repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment.").

More importantly, this court has held that a law enforcement "officer conducting a routine traffic stop may … 'request a driver's license and vehicle registration, run a computer check, and issue a citation'" as long as "the officer, at the time he or she asks questions or requests the driver's license and registration, still has some 'objectively reasonable articulable suspicion' that a traffic violation 'has occurred or is occurring.'" *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994) (quoting *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993)); *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). Because Teachman had reasonable suspicion to believe Thompson had committed a traffic violation at the time he requested Thompson's driver's license, his request did not exceed the scope of the stop.

*The Search*

Next, Thompson claims Teachman lacked the requisite reasonable suspicion to justify a pat-down search, arguing Thompson's commission of a minor traffic infraction and his "passive failure to respond" to Teachman's commands were insufficient to give rise to reasonable suspicion he was armed. Thompson neglects to mention that he was also "fidgety and nervous," and this Court has "recognize[d] that … 'nervous, evasive

8

behavior is a pertinent factor in determining reasonable suspicion.'" *United States v. Harris*, 313 F.3d 1228, 1236 (10th Cir. 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). In any event, we need not determine whether Teachman had such reasonable suspicion here. Instead, we conclude the search was valid as a search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest."). *See also Swoboda v. Dubach*, 992 F.2d 286, 291 (10th Cir. 1993) ("[T]his court can affirm for reasons other than those relied on by the district court, as long as those reasons find support in the record.").

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Thompson argues Teachman could not have possibly known Thompson was the individual driving the Buick at the time of the traffic infraction and thus lacked probable cause to suspect him of driving without a license. In support, Thompson cites *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012) and *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008).

But in *Romero*, no one actually saw the commission of the crime for which the officers arrested the plaintiff; someone simply reported the presence of a Hispanic male in the general vicinity of a vandalized vehicle after hearing a loud noise. *Romero*, 672 F.3d at 883, 886. Similarly, in *Fogarty*, no one actually saw the plaintiff commit a crime; officers simply arrested him based on their general characterization of the protest in which he had been involved. *Fogarty*, 523 F.3d at 1158. Neither case applies here, where Teachman found Thompson (a black male) sitting alone in the driver's seat of a vehicle

9

(a black Buick LaCrosse) only moments after Teachman had *actually seen* a lone black male driving a black Buick LaCrosse commit a traffic infraction. The keys were in the car, there was no one else in the vicinity, and Thompson was unable to produce a license.

Under these circumstances, we conclude Teachman had probable cause to believe Thompson had committed the offense of driving without a license.

*The Statement*

Finally, Thompson argues that the district court erred in refusing to suppress his post-arrest admission that the object in his pocket was a gun because Teachman never informed him of his *Miranda* rights. As the Government points out in its brief, however, we have "applied the … public safety exception to allow an officer to ask a suspect, 'Do you have any guns or sharp objects on you?' without first giving the *Miranda* warnings." *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009); *United States v. Lackey*, 334 F.3d 1224, 1225 (10th Cir. 2003). Thus, the district court did not err in refusing to suppress Thompson's statement.

In sum, the stop was valid at its inception because Teachman had reasonable suspicion to believe the individual sitting in the parked Buick had just committed a traffic infraction. Given the basis for the stop, Teachman's request for Thompson's license did not exceed the scope of the stop. Further, Teachman had probable cause to arrest Thompson for driving without a license, justifying the search as a valid search incident to arrest. Finally, the public safety exception to *Miranda* applies to Thompson's statement. Thus, the district court did not err in denying Thompson's motion to suppress.

10

*The Sentence*

Thompson also raises four challenges to his ACCA-based sentence. We review legal challenges to the ACCA de novo, but review any factual findings for clear error. *United States v. Doe*, 398 F.3d 1254, 1257 (10th Cir. 2005) (clear error standard); *United States v. Green*, 55 F.3d 1513, 1515 (10th Cir. 1995) (de novo review).

Thompson first argues the district court erred in using his prior convictions to increase his mandatory minimum sentence under the ACCA without requiring the Government to include those convictions in the indictment and prove them to a jury beyond a reasonable doubt. But we have previously held that determining whether a prior conviction constitutes a predicate offense for ACCA purposes "involves an inquiry intimately related to whether a prior conviction exists, and therefore falls within the prior convictions exception to the *Apprendi* rule." *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 466 (2000), for rule that Government "need not charge the 'fact' of a prior conviction in an indictment and submit it to a jury.").

Second, although Thompson acknowledges that he was convicted in CF-2005-4722 of four counts of distributing cocaine on different occasions, he relies on the language of U.S.S.G. § 4A1.2(a)(2) to argue those convictions, in the absence of intervening arrests, do not qualify as "separate" for purposes of triggering the ACCA's mandatory minimum sentence.

But as the Government points out, while courts occasionally look to the language of the USSG for guidance in interpreting the ACCA, this court has declined to apply

11

U.S.S.G. § 4A1.2's test for determining whether prior offenses are "separate" under the USSG to the question of whether prior offenses occurred on "different occasions" under the ACCA. *See, e.g.*, *United States v. Delossantos*, 680 F.3d 1217, 1220 n.3 (10th Cir. 2012) ("Whether a case is 'related' under the USSG 'is broader than the category of cases in which the prior offenses will be deemed to have occurred on the same occasion for purposes of the ACCA.'" (quoting *United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998))).

Unlike U.S.S.G. § 4A1.2(a)(2), which asks whether prior offenses were separated by an intervening arrest or arrests, 18 U.S.C. § 924(e)(1) asks only whether the offenses were "committed on occasions different from one another." Because Thompson does not dispute that he has at least three convictions for serious drug offenses that occurred on different dates, the absence of intervening arrests between those offenses is irrelevant, and his argument to the contrary fails.

Third, Thompson argues he received illegal sentences for three of his prior convictions. Because those sentences are illegal, he contends the convictions are invalid as well, and cannot support an enhanced sentence under the ACCA. Even assuming the illegality of the challenged sentences, however, collateral challenges to prior convictions outside post-conviction habeas proceedings are limited to claims alleging violations of the Sixth Amendment right to counsel. *See United States v. Smith*, 652 F.3d 1244, 1246 n.3 (10th Cir. 2011) ("A defendant may not collaterally attack a previous state conviction used to enhance his [or her] sentence under the ACCA outside habeas proceedings except in the limited circumstances where his right to appointment of counsel has been

12

violated."). Because Thompson cannot use this appeal as a vehicle to collaterally attack his previous convictions, we reject his argument.

Finally, Thompson complains he received inadequate notice of the Government's intent to request an enhanced sentence under the ACCA. Although the Government filed written notice that it intended to seek application of the ACCA's enhanced penalty section based on Thompson's convictions in several cases, Thompson correctly asserts that the written notice did not specifically mention his conviction in CF-2000-1029. Thus, Thompson argues, the Government's subsequent reliance on that conviction in asking the district court for an enhanced sentence under the ACCA deprived him of adequate notice under the Due Process Clause.

But "due process does not require the government to provide formal, pretrial notice of its intention to seek a sentence under the ACCA." *United States v. Martinez*, 30 F. App'x 900, 908 (10th Cir. 2002) (unpublished). *See also United States v. Johnson*, 973 F.2d 857, 860 (10th Cir. 1992) ("Once the sentencing court was aware that the requirements of § 924(e)(1) were satisfied, the enhancement was mandatory. The statute does not require government action to trigger its application nor does it vest discretion in the sentencing court not to apply its mandate."). Moreover, even if due process required such notice, any error resulting from the Government's failure to include Thompson's conviction in CF-2000-1029 in its written notice was harmless.

Because the district court could have relied solely on Thompson's convictions in CF-2005-4722 to trigger the ACCA's enhanced penalty section, its consideration of Thompson's conviction in CF-2000-1029 had no impact on its decision. *See United*

13

*States v. Small*, 423 F.3d 1164, 1190 (10th Cir. 2005) (constitutional error is harmless if government can demonstrate beyond a reasonable doubt that the error did not affect defendant's substantial rights). Thus, the Government's failure to specify Thompson's conviction in CF-2000-1029 in its written notice does not require that we vacate Thompson's sentence.

## **CONCLUSION**

Because none of Thompson's challenges warrant reversal, we affirm his conviction and sentence.

Entered for the Court


Nancy L. Moritz
Circuit Judge