**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VERDALE HANDY,

Defendant - Appellant.

No. 11-3246

D. Kansas

(D.C. No. 2:09-CR-20046-CM-8)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

I.    **Introduction**

Appellant Verdale Handy was charged in an eleven-count indictment with

attempted murder, possession and use of a firearm during a crime of violence, and

multiple drug trafficking offenses. A jury convicted Handy on all eleven counts

and he was sentenced to a term of life imprisonment. Handy brought this direct

criminal appeal, raising the single issue of whether the district court erred in

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

denying his *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79 (1986).

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II.    Background

On March 24, 2010, Handy was charged in a third superceding indictment

with conspiring to distribute heroin, distributing heroin, maintaining a residence

for the purpose of distributing heroin, possessing a firearm during and in relation

to a crime of violence, and attempted murder.  Jury selection began on November

22, 2010.  There were two African American members of the venire panel; panel

member 0174 and panel member 0191.  During voir dire, the Government

exercised peremptory challenges to strike both of these panel members.  Handy,

who is also African American, raised a timely *Batson* objection to the striking of

panel member 0191.  *See Batson*, 476 U.S. at 89 (holding the Equal Protection

Clause prohibits the prosecution from exercising a peremptory challenge to

exclude a prospective juror because of the juror's race).

In response to the objection, the Government offered the following four

reasons for striking panel member 0191:

> [Panel member 0191] initially indicated that her son had gotten in
> trouble for—she believed it was marijuana—she said it was a drug
> case.  She went on to explain that her—his friends had drugs at the
> apartment.  There was a bust, and that he was in trouble.  She
> indicated there was a consequence of community service, but seemed
> unwilling to accept his guilt in that, despite the fact that he has a
> consequence.  Next, actually, she and [panel member 0059] made
> unequivocal statements regarding concerns about people testifying
> who are cooperators or informants.  I had intended to strike [0059] as

-2-

well, but the defense struck her first, but unlike other jurors that made these comments, other jurors said it was a common circumstance, or they would need to know more about it. These two were very firm about their belief that if somebody would testify and would do so in exchange for such as a lower sentence, that they would have a difficult time believing them. Next, [0059] and [0191] also indicated that they would want their own questions answered, and they would find that that was reasonable doubt. That was another reason I planned to strike [0059] was her statements that were so strong on this [0191] was very strong on this, too. Those two, I had intended to strike for the same reasons. Further, the mannerisms by [0191] as well as [0059] were negative when they were responding to statements regarding cooperators and informants . . . often negative to the government, I should say. [0059] and [0191] nodded their heads in agreement, seemed to be going along with counsel as he talked about their getting lesser sentences or some sort of benefit from testifying for the government, whereas other people asked if they would know, or if they—if they would be told the circumstances that surrounded these particular cooperators. [0059] and [0191] seemed very decided on that fact, and for those reasons, I struck [0191], and I would have struck [0059] who for the record is Caucasian.

The district court concluded the Government's reasons for striking panel member 0191 were facially neutral and invited Handy to present information indicating the reasons were actually a pretext for racial discrimination. Handy's counsel responded with the following argument:

Your Honor, I would state at the outset that there were two African Americans on the jury, [0191 and 0174], that the government has struck both of them through their peremptory challenges, that as a consequence of the government's strikes, there are no members of the African American community on the jury, and both defendants are African American. To the government's race neutral explanations, I would state that [panel member 0188] who was Caucasian and male made the same comments about how essentially you'd be robbing Peter to pay Paul about cooperator testimony and his reservations there, and he was not struck. Other people made

-3-

comments just the same who are Caucasian, and they were not struck by the government. Your Honor, I would state that that is simply not a race neutral reason, because other people were not struck.

Despite the reference to panel member 0174 in Handy's argument, he confirmed he was not raising a *Batson* challenge to the removal of panel member 0174. He explained the reference to panel member 0174 was made only to bolster his challenge to the removal of panel member 0191.

After hearing additional explanation from the Government, the district court asked Handy if he would like to supplement his argument and counsel responded, "I have nothing further, Your Honor." The district court overruled Handy's *Batson* challenge, specifically stating it "heard the responses that were made from the panel during voir dire," and was basing its ruling on "the responses that [panel member 0191] made," the "references the government has put on the record for the basis for the strike," and Handy's "response in regards to why [he] believes facially neutral reasons are actually pretextual for discrimination."

The case proceeded to trial and Handy was convicted on all eleven counts charged in the indictment. Handy filed a timely direct criminal appeal, challenging only the district court's denial of his *Batson* challenge.

## III. Discussion

In *Batson*, the Supreme Court held "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the

assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89. The Court established a sequential, three-step process to aid district courts in determining whether the exercise of a peremptory challenge is a violation of the defendant's equal protection rights. *Id.* at 93-98; *see also Black v. Workman*, 682 F.3d 880, 894 (10th Cir. 2012). The first step places a burden on the defendant to make a prima facie showing that the Government's peremptory strike was based on race. *Black*, 682 F.3d at 894. The Government does not dispute that Handy satisfied his first-step burden.[1] *See Batson*, 476 U.S. at 96. At the second step of the *Batson* analysis, the burden shifts to the Government to articulate a race-neutral explanation for the exercise of the peremptory strike. *Black*, 682 F.3d at 894. Here, the district court concluded the four reasons articulated by the Government were race-neutral and Handy does not challenge that conclusion on appeal. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.").

---

[1]In any event, at this stage of the proceedings the issue of whether Handy met his prima facie burden is moot. *United States v. Barrett*, 496 F.3d 1079, 1104 (10th Cir. 2007) ("[T]he first issue of whether a prima facie case of discrimination exists becomes moot whenever the prosecutor offers a race-neutral explanation for [her] peremptory challenges and the trial court rules on the ultimate factual issue of whether the prosecutor intentionally discriminated." (quotation omitted)).

This brings us to the third step of the *Batson* review process. At this stage, the district court must decide whether the defendant has demonstrated that the Government's proffered reasons are a pretext for racial discrimination. *Id*. "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006) (quotations omitted). We have previously suggested that the district court should ask defendant's counsel to respond to the Government's facially neutral reasons. *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 855 (10th Cir. 2000). Seeking a response from the defendant, "clearly defines the opposing positions, facilitates the district court's task by separating the second and third steps of the *Batson* test, and greatly aids appellate review." *Id*. The district court followed our recommendation in this matter, inviting Handy's counsel to show the Government's "facially neutral reasons are actually pretextual." Counsel responded by arguing a white member of the venire expressed the same reservations about "cooperator testimony" as panel member 0191 but was not struck from the jury. The Government countered this argument by asserting white panel members did not make the same comments about cooperator testimony as juror 0191 and juror 0191 was not equivocal in her views but was "very, very strident." The district court then invited Handy's

counsel to respond to the Government's additional comments, asking, "Anything else"? Counsel responded, "I have nothing further, Your Honor."

Handy argues the district court erred at the third step of the *Batson* analysis by concluding the Government's proffered reasons for striking juror 0191 were not a pretext for unlawful discrimination. The district court's ruling on pretext is reviewed for clear error.[2] *Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008); *United States v. Prince*, 647 F.3d 1257, 1262 (10th Cir. 2011) ("In assessing an equal protection claim under [the *Batson*] test, we review for clear error the district court's finding of whether the striking party had discriminatory intent." (quotation omitted)).

Based on the record before us, it is clear Handy did not meet his burden of proving the Government engaged in purposeful discrimination when it exercised a peremptory challenge to remove panel member 0191. The Government offered four facially neutral explanations for its peremptory challenge, the first of which was that juror 0191 was "very firm about [her] belief that if somebody would testify and would do so in exchange for such as a lower sentence, [she] would have a difficult time believing [the witness]." ROA, vol 3 at 199. Before the

_____

[2] The Government argues the prosecutor articulated four reasons for striking juror 0191 but Handy challenged only one of those reasons before the district court. It urges this court to review the district court's *Batson* ruling for plain error because Handy's appellate challenges to the remaining three reasons are not preserved. Because the district court's ruling can be easily affirmed under the clear error standard, we do not address this argument.

district court, Handy argued panel member 0188, who is white, expressed similar sentiments about cooperating witnesses but was not struck from the jury pool. With the benefit of hindsight and a fully transcribed record, Handy now argues the prosecution mischaracterized the responses of juror 0191 and the white panel member and this mischaracterization is evidence of discriminatory intent.

Having reviewed the record, we conclude there is ample support for the Government's position that the prosecutor accurately paraphrased the jurors' responses. Panel member 0191 stated, "I have concerns . . . that people get paid, and I was kind of mulling it in my head. I don't think I would trust them as much if I knew that they were being compensated for their—for their testimony in terms of being a witness to something. I think in my mind, I do have a problem with that . . . ." ROA, vol. 3 at 187. Panel member 0188, on the other hand, gave a much more terse statement, saying he agreed with panel members 0061 and 0134, both of whom expressed short, nonspecific concerns about trusting cooperating witnesses.[3] *Id.*

Additionally, the prosecutor described juror 0191's position on cooperating witness testimony as "very firm" and characterized the juror's answer on the issue as "very, very strident." As an additional justification for the peremptory strike,

_____

[3]In contrast to panel member 0191 who stated she would "have a problem with" the testimony of cooperating witnesses, panel member 0134 simply stated the testimony of a cooperating witness "would make me a little suspect." ROA, vol 3 at 187, 189.

the Government further asserted that juror 0191 exhibited mannerisms negative to the prosecution during the discussion of cooperator testimony. Thus, the Government's exercise of its peremptory strike was based, in part, on juror 0191's demeanor. Handy acknowledges a *Batson* finding is based largely on an evaluation of the prosecutor's credibility. *Nelson*, 450 F.3d at 1207 (stating a district court's *Batson* finding is "accorded great deference on appeal because such a finding largely turns on the trial court's evaluation of the prosecutor's credibility." (quotations omitted)). He argues, however, the district court failed to make express findings on the credibility of the Government's characterization of juror 0191's demeanor and thus there is nothing in the record to which this court can defer. This position is without merit.

At the third step of the *Batson* analysis, it was Handy's burden to show the Government's facially neutral explanations were pretextual. *Nelson*, 450 F.3d at 1207. The argument he presented to the district court was confined to an assertion a white panel member expressed the same doubts about cooperator testimony as those expressed by panel member 0191 but the white juror was not struck. Although given two opportunities by the district court, Handy presented no argument challenging the Government's characterization of juror 0191's demeanor. Ultimately, Handy's appellate argument challenging the prosecutor's credibility by asserting juror 0191 did not exhibit mannerisms negative to the Government finds no support in the record because he did not meet his burden to

make such a record.[4]  Because Handy did not make any argument challenging the prosecutor's characterization of juror 0191's demeanor, he "gave the district court no reasonable basis for questioning the government's credibility."  *United States v. Smith*, 534 F.3d 1211, 1226 (10th Cir. 2008) (quotations omitted).  Accordingly, there is no record from which we could conclude the court erred by not doubting the prosecutor's credibility.

After reviewing the record and considering all of Handy's appellate arguments, this court concludes the district court's finding that the exercise of a peremptory challenge to strike panel member 0191 was not motivated by intentional discrimination is not clearly erroneous.  This conclusion is bolstered by the lack of any challenge from Handy to the Government's assertion juror 0191 was also struck because she had a son who was arrested on drug charges.  That assertion is uncontroverted and clearly supported by the record.  *See United States v. Crawford*, 413 F.3d 873, 875 (8th Cir. 2005) (holding "there is no *Batson* violation when a juror is dismissed because the juror's relatives have been prosecuted or convicted of a crime").  Handy has not identified any other venireperson who remained on the jury despite having a family member with a criminal history involving illegal drugs.

---

[4]Our independent review of the record has revealed nothing that clearly refutes the Government's characterization of panel member 0191's mannerisms.

## IV.    Conclusion

The district court's denial of Handy's *Batson* challenge is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge