FILED
United States Court of Appeals
Tenth Circuit

February 11, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 11-3224 |
| v. | D. Kansas |
| FREDERICO RAMSEY, | (D.C. No. 2:09-CR-20046-CM-4) |
| Defendant - Appellant. | |

---

### ORDER AND JUDGMENT[*]

---

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

## I.    Introduction

A federal jury convicted Defendant Federico Ramsey on one count of conspiracy to distribute and possess with intent to distribute heroin, and three counts of distribution and possession with intent to distribute heroin. He was sentenced to 292 months' imprisonment. In this appeal, he argues the district court erred by refusing to sever his trial from that of his codefendant, Verdale Handy, and by denying his *Batson* challenge. *See Batson v. Kentucky*, 476 U.S.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

79 (1986). He also argues the Government's evidence was insufficient to sustain the conspiracy conviction and one of the convictions for possession with intent to distribute heroin.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's rulings and Ramsey's convictions.

## II. Background

Ramsey and Handy were charged in a multi-count indictment with criminal activity relating to their alleged involvement in a conspiracy to distribute heroin. Prior to the commencement of jury selection, Ramsey moved to sever his trial from that of his codefendants.[1] In support, he argued the jury would not be capable of "making an individualized assessment" of his guilt because he was charged only as a "minor player" in the heroin conspiracy. The Government opposed the motion and the district court denied it.

During voir dire, the Government used a peremptory challenge to strike an African American member of the venire. Handy raised a timely *Batson* objection and Ramsey joined that objection. *See Batson*, 476 U.S. at 89 (holding the Equal Protection Clause prohibits the prosecution from exercising a peremptory challenge to exclude a prospective juror because of the juror's race). The district

---

[1]At the time Ramsey filed his motion, there were eight codefendants including Ramsey. Of those eight individuals, only Ramsey and Handy did not enter into plea agreements with the Government before trial.

court overruled the *Batson* challenge, concluding Handy and Ramsey failed to demonstrate that the Government's proffered reasons for striking the juror were a pretext for racial discrimination.

After the jury returned the guilty verdicts, Ramsey sought a new trial, arguing the district court erred by refusing to sever his trial from that of his codefendant, Handy. In support, he argued trial evidence relating to Handy's attempt to murder a witness was inflammatory and prejudiced his right to a fair trial because he was not charged with any offense related to that conduct. The district court denied this request, concluding the evidence relating to the attempted murder did not unfairly prejudice Ramsey and any potential prejudice was corrected by the jury instructions.

## III. Discussion

### A. *Motion to Sever*

On appeal, Ramsey first argues the district court erred by refusing to sever his trial from Handy's trial. Although "there is a preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United States*, 506 U.S. 534, 537 (1993), Rule 14(a) of the Federal Rules of Criminal Procedure permits a district court to sever the trial of a codefendant if joinder "appears to prejudice a defendant or the government." This court reviews the denial of a motion to sever for abuse of discretion. *United States v. Colonna*, 360 F.3d 1169, 1177 (10th Cir. 2004). To establish an abuse of discretion, Ramsey must meet a

heavy burden of showing that "actual prejudice" resulted from the denial of his motion. *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009). Prejudice occurs when there "is a serious risk that a joint trial [will] compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Ramsey must also overcome the presumption in a conspiracy trial that coconspirators charged together should be tried together. *United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir. 2005).

Ramsey, admittedly a low-level member of the conspiracy, argues he has shown prejudice because the great weight of the evidence introduced during trial was inapplicable to the charges against him. Specifically, he focuses on trial testimony that codefendant Handy attempted to murder an individual he believed was a "snitch" and evidence two individuals died after using heroin sold to them by other members of the conspiracy. Ramsey asserts he was not involved in any of these incidents but the admission of the evidence relating to them diminished his right to a fair trial by prejudicing the jury against him.

The Government is correct that Ramsey cannot establish prejudice merely by showing there was "a negative spill-over effect from damaging evidence presented against" Handy or that he was less culpable than Handy. *United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1995). Ramsey's argument goes a step further, however, and encompasses the assertion he was prejudiced because the bulk of the evidence presented at trial would not have been admissible if he had

-4-

been tried alone. While there is some appeal to this argument as a general proposition, Ramsey's argument fails because he has not shown the evidence would be inadmissible to prove the conspiracy charge against him if he had been tried alone.

Overt acts taken in furtherance of a conspiracy are admissible against all coconspirators as evidence of the conspiracy. *See United States v. Scott*, 37 F.3d 1564, 1581 (10th Cir. 1994). There was testimony Handy shot Henry Nelson because he and one of the coconspirators believed Nelson was the "snitch" who was providing information to the police about the conspiracy. Additionally, the evidence linking Handy to the Nelson shooting included testimony Ramsey was present during a meeting at which the coconspirators discussed the possibility a member of the conspiracy was cooperating with the police. Ramsey does not make any colorable argument that he withdrew from the conspiracy before Handy shot Nelson or that the shooting was not undertaken in furtherance of the conspiracy. *See United States v. Randall*, 661 F.3d 1291, 1295-96 (10th Cir. 2011) (holding a conspirator can withdraw from a conspiracy by either: (1) "giv[ing] authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy," or (2) "communicat[ing] his withdrawal directly to his coconspirators in a manner that reasonably and effectively notifies the conspirators that he will no longer be included in the conspiracy . . . in any way"). Thus, testimony relating to the shooting was

admissible against Ramsey as evidence of the conspiracy. The evidence that customers of the conspiracy died after using heroin provided by the conspiracy was also admissible against Ramsey because the overt acts of the other coconspirators in providing that heroin were undertaken in furtherance of the conspiracy. Further, even if the sales were made before Ramsey joined the conspiracy, "a defendant who joins an ongoing conspiracy may be held accountable—for purposes of determining the scope of liability for the conspiracy charge itself—with the acts or statements of coconspirators that occurred prior to his entry into the conspiracy, if those acts or statements were in furtherance of the conspiracy." *United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009).

Ramsey's prejudice argument fails for another reason. The Government does not seriously dispute that Ramsey and Handy had "markedly different degrees of culpability," and concedes there is an increased risk of prejudice from a joint trial under such circumstances. *See Zafiro*, 506 U.S. at 539. The Supreme Court, however, has held "limiting instructions often will suffice to cure any risk of prejudice." *Id*. Here, the jury instructions contained an appropriate limiting instruction, advising the jury as follows:

> A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant. Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendant or counts.

Ramsey has not pointed to anything in the record indicating the jury did not follow these instructions. To the contrary, the jury's verdict, which contains specific findings as to the drug quantities attributable to Ramsey, indicates the jury was able to compartmentalize the evidence against the two codefendants.

For all these reasons, Ramsey has not met his burden of showing that actual prejudice resulted from being tried jointly with Handy. Accordingly, we conclude the district court did not abuse its discretion when it denied his request for severance.

B. *Batson Challenge*

Ramsey next challenges the district court's denial of his *Batson* challenge. In support, he presents materially the same arguments challenging the credibility of the prosecutor that this court considered and rejected in Handy's direct criminal appeal. *United States v. Handy*, No. 11-3246, 2012 WL 6062658 (10th Cir. Dec. 7, 2012) (unpublished disposition). For the same reasons articulated fully in *Handy*, we conclude the district court did not clearly err when it denied the *Batson* objection. *Id*. at *2-*4.

C. *Sufficiency of the Evidence*

The final issue advanced by Ramsey is a challenge to the sufficiency of the evidence supporting his conviction for conspiracy to distribute heroin and one of his convictions for possession with intent to distribute heroin. This court reviews *de novo* whether the Government presented sufficient evidence to support a

conviction. *United States v. Winder*, 557 F.3d 1129, 1137 (10th Cir. 2009). We must determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt after considering all the evidence, including any reasonable inferences that may be drawn therefrom, in the light most favorable to the Government. *Id*. We do not re-weigh the evidence presented to the jury or assess witness credibility. *Id*.

To prove a conspiracy charge, the Government is required to show "(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent." *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotation and alteration omitted). Ramsey's challenge is confined to an assertion the Government failed to prove two of these four elements—agreement and interdependence. After reviewing the record, we reject his argument because a rational jury could have found these two elements were proved beyond a reasonable doubt from the evidence presented at trial.

The agreement element can be proved with circumstantial evidence of even an informal agreement. *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004). The Government points to ample evidence supporting the agreement element of the conspiracy charge, including the testimony of coconspirator Nelson. According to Nelson, Ramsey received supplies of heroin from Handy on

-8-

credit and was given a "cut" of the proceeds after the drugs were sold. The amount of the payments to Ramsey were set by Handy. Ramsey distributed the heroin from two properties owned or rented by Handy. Nelson also testified that he drove Ramsey to these properties to distribute the heroin because Ramsey did not own a car. There was also testimony that Handy hired Ramsey to distribute heroin because he wanted to limit Nelson's street exposure.

Trial testimony also supports the proposition that Ramsey sold heroin for the conspiracy over a period of several months, indicating his association was not fleeting. Government witness Rachel Teasley testified she purchased heroin from Ramsey approximately 100 times. Deputy Justin Branner testified that he made a controlled buy from Ramsey on November 4, 2008, and again on January 12, 2009. Nelson testified that Ramsey distributed heroin for the conspiracy over a period of two to three months.

This evidence, taken as a whole, shows more than "mere association" with the other conspirators. Based on the evidence, a reasonable jury could find that Ramsey agreed to distribute heroin on behalf of the conspiracy.

Much of the same evidence supporting the agreement element of the conspiracy charge is relevant to the interdependence element. "Interdependence is present if the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole." *United States v. Wardell*, 591 F.3d 1279, 1291 (10th Cir. 2009) (quotation

omitted). The evidence shows Ramsey sold heroin and collected payment on behalf of the conspiracy. Further, he was hired to minimize the street exposure of Nelson in an effort to limit the possibility the police would become aware of the activities of the conspiracy. These acts facilitated the venture as a whole and indicate Ramsey had a vital role in the overall conspiracy even if his participation was minor. Thus, the evidence fully supports the jury's finding on interdependence.

Ramsey also argues the evidence was insufficient to sustain one of his convictions for possession with intent to distribute heroin. This charge was based on drugs seized during a search of a residence located at 5915 Cernech Road in Kansas City, on January 14, 2009. At the time of the search, Ramsey was present in the residence with Nelson. When officers executed the warrant, they discovered Nelson attempting to flush heroin capsules down the toilet. Ramsey was discovered in the living room. To prove the charge against Ramsey, the Government was required to show Ramsey knowingly possessed the drugs found in the residence and had the specific intent to distribute them. *United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). The conviction can be based on a finding of either actual or constructive possession. *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000). Even assuming the evidence was not sufficient to establish actual possession, it was sufficient to establish constructive possession.

"To prove constructive possession, the government must present evidence establishing some nexus, link, or other connection between the defendant and the contraband." *Cardinas-Garcia*, 596 F.3d 788, 794 (10th Cir. 2010) (quotation omitted). If an item is found on a premises jointly occupied by the defendant and other individuals, the Government can show constructive possession by presenting evidence that "plausibly supports the inference that the defendant had knowledge of and access to the contraband." *United States v. Bagby*, 696 F.3d 1074, 1081 (10th Cir. 2012) (quotation and alteration omitted). Ramsey argues the Government did not present any evidence linking him to the heroin found during the search other than his "mere presence at the scene." The Government's evidence, however, included testimony that an undercover officer purchased heroin from Ramsey on two occasions. Both purchases were made at the Cernech residence and one took place less than forty-eight hours before the search warrant was executed. This evidence amply supports the proposition that Ramsey knew heroin was stored at, and distributed from, the Cernech location. It also shows that Ramsey had access to the heroin at the residence. Additionally, some of the heroin seized during the search was found on the floor of the living room—the room in which officers located Ramsey. This evidence, including all the reasonable inferences that can be drawn from it, was sufficient to support the jury's finding that Ramsey possessed the heroin discovered during the search with the intent to distribute it.

## IV.    Conclusion

Ramsey's convictions are **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge