**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5057

STEVEN HOLT,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-94-320-A)

Argued: December 6, 1995

Decided: March 15, 1996

Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Wilkins and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** David Alan Hirsch, MENDELSOHN & ISHEE, P.C.,
Fairfax, Virginia, for Appellant. Kathleen Marie Kahoe, Assistant
United States Attorney, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Vir-
ginia, for Appellee.

**OPINION**

PER CURIAM:

Steven Holt appeals the district court's judgment of conviction entered upon the jury's verdict finding Holt guilty of being an inmate in possession of a weapon in violation of 18 U.S.C.§ 13 (assimilating Va. Code Ann. § 53.1-203(4)).* Holt assigns as error the district court's refusal to instruct the jury that his possession of a weapon could be justified by self-defense, and the court's failure to accord him a downward adjustment for acceptance of responsibility. Rejecting both contentions, we affirm Holt's conviction and sentence.

I

On June 21, 1994, while Lorton Corrections Officer Grenada was patrolling a walkway between dormitories, he overheard a passing inmate state that "they" were trying to injure him. Officer Grenada then saw inmates Willie James and Stephen Holt coming up the walkway. James was holding his waistband as though he was trying to conceal something. Officer Grenada asked James to submit to a search, and James and Holt fled down the walkway where James dropped a knife. Officer Grenada picked up this knife, and when he caught up with them, Holt was holding a closed pocket knife in his right hand. As several officers approached, Holt opened up the knife and held the blade down by his leg. The officers asked Holt several times to drop the knife, at which point Holt complied by closing the blade and handing the knife to one of the officers.

Holt conceded at trial that he possessed the knife. Holt testified, however, that he came into possession of the knife only after three unknown inmates attacked him in one of the dormitories. According to Holt, his attackers dropped the knife and fled the dormitory because corrections officers were approaching. Afraid his attackers would return, Holt contended he picked up the knife and ran past sev-

_____

*The Virginia statute makes it a felony for a prisoner to "[m]ake, procure, secrete or have in his possession a knife, instrument, tool or other thing not authorized by the superintendent or sheriff which is capable of causing death or bodily injury." Va. Code Ann.§ 53.1-203(4)).

2

eral corrections officers until he was intercepted by Officer Grenada and others. Holt testified he did not immediately stop and report the attack to the first officer he encountered because he was searching for a particular officer whom he trusted.

Holt sought an instruction from the court informing the jury that his conduct in possessing the knife could have been justified if it was done in self defense. The district court denied this request, reasoning that no such defense was available to the strict liability offense of inmate possession of a weapon and, alternatively, that even if such a defense were available, there was no evidence to justify the instruction. Holt was convicted, and he noted a timely appeal.

II

The question of whether an inmate can argue common law affirmative defenses for violating the strict liability offense of inmate weapons possession is one of first impression in this court. Because of the potential for uncontrolled violence within a prison, courts considering the issue consistently refuse to allow the defense to inmates arming themselves for protection against a future attack. These courts reason that:

> [a] jail in which the prisoners could assert a court approved "right" to possess deadly weapons for protection would be impossible to administer humanely and safely. The very existence of the weapons inevitably invites their use on other inmates and correctional officers. That is why our statutes prohibiting such possession by prisoners have always been construed to be absolute, and to permit no defense based on a claim of protection against future attack.

People v. Velasquez, 158 Cal. App.3d 418, 422 (Cal. Ct. App. 1984); accord State v. Vandiver, 757 S.W.2d 308, 312 (Mo. Ct. App. 1988); Carter v. State, 312 So.2d 494 (Fla. Dist. Ct. App. 1975). Nonetheless, some courts recognize that affirmative defenses may be asserted by inmates charged with weapons possession, but only under very narrow circumstances. These courts generally allow affirmative defenses to be raised where an unarmed inmate is attacked by an armed inmate and the unarmed inmate temporarily uses the other

3

inmate's weapon in self-defense. See State v. Vandiver, 757 S.W.2d at 311-12; People v. Perry, 377 N.W.2d 911, 914-15 (Mich. Ct. App. 1985); Mungin v. State, 458 So.2d 293, 297 (Fla. Dist. Ct. App. 1984). An affirmative defense is available for the moment when the inmate is attacked and he fears imminent threat of death or serious bodily injury.

In an analogous context, we have considered the applicability of common law affirmative defenses to defendants charged with the strict liability offense of being a felon in possession of a handgun. In United States v. Crittendon, 883 F.2d 326, 330 (4th Cir. 1989), we indicated that a defendant might be able to assert justification as a defense to such a charge. The defendant in Crittendon was a felon who possessed a revolver for protection because he had been shot one evening as he returned home from work, and he feared his attackers might return. He was arrested and charged with felon in possession of a handgun. Without specifically deciding whether the defense of justification was available for that offense, this court held that the defendant could not receive such an instruction because the evidence did not reveal an imminent fear of death or bodily injury at the time of the possession. Id.

Similarly, although a case may exist in which a defendant could raise self defense as a justification for possessing a weapon in prison, we need not decide the issue here. Like the defendant in Crittendon, Holt has failed to produce any evidence that he was under imminent threat of death or bodily injury when he possessed the knife. True, if Holt's account of events is believed, a reasonable juror could con-clude that Holt was indeed under threat of death or bodily injury at the moment he actually procured the knife. But, even under Holt's account, the procurement of the knife was, both spatially and tempo-rally, far removed from the point at which he was charged with pos-session. In other words, by the time corrections officers confronted Holt as he clutched the knife at his side, he was no longer under an imminent threat of death or bodily injury so as to justify his posses-sion of the knife. Holt testified that he picked up the knife as his attackers fled the scene, and that he continued possessing the knife only because he was afraid they would return. Like the defendant's proffered justification in Crittendon, however, Holt's generalized fear

4

of a repeat attack cannot qualify as an imminent threat of death or injury.

If that testimony was not enough to defeat his assignment of error, Holt also conceded that he had earlier opportunities to report the incident and turn the knife over to correctional officers. Although Holt's stated reason for not doing so was because he was looking for a particular officer whom he trusted, we think it reasonable to require of defendants seeking a self-defense instruction that they first proffer evidence demonstrating a lack of reasonable legal alternatives to committing the crime. See Crittendon, 883 F.2d at 330. Holt clearly had reasonable legal alternatives to possessing the knife, and he gave no reason why these alternatives were ineffectual. See United States v. Harper, 802 F.2d 115, 118 (5th Cir. 1986) (holding that to establish a lack of legal alternatives, the defendant must show that he actually tried the alternatives or had no time to try them, or that a history of futile attempts revealed the illusory benefits of the alternatives).

Accordingly, without deciding whether a defendant can ever argue a common law affirmative defense to an inmate weapons possession charge, we find that Holt was not entitled to such an instruction under the facts of this case.

III

Holt also contends the district court erred in failing to accord him a downward adjustment in his offense level for acceptance of responsibility under United States Sentencing Commission, Guidelines Manual, § 3E1.1 (Nov. 1994). We review the factual findings supporting the district court's refusal to grant a downward adjustment for clear error. United States v. Reavis, 48 F.3d 763, 768 n.1 (4th Cir.), cert. denied, 63 U.S.L.W. 3890 (U.S. 1995).

The district court understood that Holt could obtain a downward adjustment for acceptance of responsibility even after putting the government through its burden of proving its case at trial, as long as Holt went to trial to preserve issues unrelated to factual guilt. See U.S.S.G. § 3E1.1, comment. (n.2). The court did not believe, however, that Holt had gone to trial to preserve issues unrelated to factual guilt. Instead, the court believed Holt's affirmative defense was meritless

5

and that his attempt to minimize his culpability was not an acceptance of responsibility. We find no clear error in this regard. <u>See United States v. Beal</u>, 960 F.2d 629, 636 (7th Cir.) (holding that district court did not clearly err in considering inmate's justification for carrying contraband as conduct inconsistent with an affirmative acceptance of responsibility), <u>cert. denied</u>, 506 U.S. 880 (1992).

For the foregoing reasons, Holt's conviction and sentence are

<u>AFFIRMED</u>.

6