UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5637

JOHNNY LATAURUS HARRIS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5638

DONNELL HART,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-95-87-A)

Argued: April 5, 1996

Decided: August 27, 1996

Before HALL, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frank Salvato, Alexandria, Virginia, for Appellant Hart;
Drewry Bacon Hutcheson, Jr., Alexandria, Virginia, for Appellant

Harris. Morris Rudolph Parker, Jr., Special Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donnell Hart and Johnny Lataurus Harris, inmates at the District of Columbia's Lorton prison in Virginia, appeal their convictions for assaulting a correctional officer; Harris also appeals his conviction for possession of a weapon. Their sole assignments of error concern the district court's refusal to give two proffered instructions to the jury. We find no error, and we affirm.

I

The testimony at trial showed the following: On February 5, 1995, a disturbance began on the appellants' tier when inmates complained about not being able to get showers. Inmate Watson was sprayed with mace by correctional officers after he threatened to burn the tier down, and Hart was sprayed as well when he shouted for the officers to stop. The officers eventually entered the tier in riot gear and began the "extraction" of some inmates from their cells.

Hart testified that he was pushed down on his bed by shield-wielding officers during the initial extraction attempt:

> [A]nd when they removed the shields the officers that was -- they just was -- you know, like not really hitting, but just you know, bending my arms out and you know, hitting my head against the, you know, around the cell, it's like made

2

of metal, iron, was hitting me against the -- just like, you know, tussling around.

Inmate Adams chased the officers away with a homemade shank. When Officer Fuller returned to see if the inmates would leave the tier, he was stabbed in the back by Adams.

Hart threw batteries at the officers when they re-entered the tier for the fifth time to continue the extraction process. As Harris was being removed from his cell, he punched Officer Rivera several times. Several inmates testified that Harris was beaten and kicked by the officers as he was being removed from the tier, and one inmate testified that Harris was hospitalized as a result. Harris did not testify. A videotape showed Hart holding a shank during deliberations to end the uprising.

Hart and Harris were indicted on a variety of charges, including rioting and assault on a correctional officer.[1] The inmates' defense was that they were in fear for their safety because the officers were beating the inmates during the extraction process. Hart admitted throwing the batteries as the officers began moving toward him. He also admitted picking up a shank for self defense, though he did so only after the officers were called off the tier.

The district court refused to give a self-defense instruction or an instruction that a law enforcement officer's testimony is entitled to no greater consideration than that of an "ordinary citizen." Harris was found guilty on a single assault charge and not guilty on a charge of impeding a correctional officer. Hart was convicted of the assault and possession of a shank, and he was found not guilty of three other counts. In this consolidated appeal, they contend that the trial court's refusal to give the self-defense and credibility instructions constitutes reversible error.

_____

[1] Adams and Watson were also indicted. Adams pleaded guilty to two charges of assault with a dangerous weapon. Watson went to trial with the appellants and was convicted on one assault charge.

II

A

The inmates offered the following instruction:

> There has been evidence that the defendant acted in self-defense. The law recognizes the right of a person who is not the aggressor to stand his ground and use force to defend himself. However, he may use only such force as is reasonably necessary to defend himself or another person against the imminent use of unlawful force.
>
> You are reminded that the burden of proof remains at all times on the government and that the defendant need not call any witnesses, nor offer any evidence. Thus, before you may convict, you must find beyond a reasonable doubt that the government has satisfied its burden of proving that the defendant did not act in self-defense. Therefore, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty.

The government agrees that this instruction was proper in form. See United States v. Black, 692 F.2d 314 (4th Cir. 1982). It contends, however, that there was insufficient evidence to warrant such an instruction being given.

The general rule is that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988); United States v. Sloley , 19 F.3d 149, 153 (4th Cir.) (defendant entitled to any instruction for which there is an "evidentiary foundation"),[2] cert. denied, 114 S. Ct. 2757 (1994).

_____

[2] With regard to Hart's conviction for possession of a shank, we recently noted in United States v. Holt, 79 F.3d 14 (4th Cir. 1996), petition for cert. filed, (June 25, 1996) (No. 95-9448), that "a case may exist in which a defendant could raise self defense as a justification for possessing a weapon in prison . . . ," although, under the facts presented

4

The issue is whether there was sufficient evidence for a jury to find that the appellants reasonably feared that the officers were using or were about to use unlawful force against each of them, and, if so, whether the resistance used -- punches by Harris, battery throwing by Hart -- was "reasonably necessary" to defend themselves.

The inmates' argument is that there was certainly evidence from which a rational jury could have found that the officers were systematically beating inmates, that the force used by the officers was excessive and therefore unlawful, that a reasonable inmate in Hart's or Harris's shoes would have been in fear of imminent harm, and that the steps taken were reasonable. After a careful examination of the record, we find no evidentiary basis for the instruction with regard to either appellant.

B

Harris was convicted of assaulting Officer Rivera. Officer Rivera clearly had the legal right to remove Harris and the other inmates from their cells and to use whatever force was necessary to do so. Rivera testified that Harris hit him with "several uppercuts" when Rivera initially entered the cell. While there was evidence that Harris was beaten, there is nothing to refute Officer Rivera's testimony that Harris was the initial aggressor. Except for Rivera, no eyewitnesses to the initial encounter in the cell testified. Harris did not testify, so we are unable to tell what effect the presence of officers in riot gear outside his cell may have had on him. Absent an evidentiary basis for finding that Harris was reasonably afraid that he was in imminent danger of harm or that he was anything but the initial aggressor, there is simply no basis for finding that he acted in self defense. Therefore, we find no error in the court's refusal to give the instruction with respect to him.

_____

in that case, we held that no such justification existed. In Hart's case, he was observed holding a shank during negotiations with prison officials to end the disturbance. Like Holt, Hart was in no imminent danger of bodily harm at that point, and, accordingly, we hold that self defense was not an available defense as to the shank charge.

5

C

Hart was convicted of assaulting a correctional officer, in violation of D.C. Code § 22-505(a), a lesser included offense of count 7 of the indictment, assault with a dangerous weapon, in violation of § 22-505(b). The assault consisted of throwing batteries at the officers as the extraction process was underway. The evidentiary basis for the proffered self-defense instruction is lacking for a number of reasons.

First, Hart was at the end of the tier between cells ten and twenty, while his targets -- the officers -- were at cells one through four when the batteries were thrown. The danger of harm, then, was not imminent. Second, if the level of force being used by the officers was unlawful, there is nothing to suggest that such force was used on non-resisting inmates. The assault for which Hart stands convicted involved the throwing of batteries at the officers when they entered the tier for the fifth time. Up to that point, he had steadfastly refused the officers' valid orders to vacate the tier voluntarily, and nothing suggests that any force would have been used had Hart left the tier without resistance. Hart was not entitled to "stand his ground." See United States v. Jennings, 855 F. Supp. 1427, 1436 (M.D. Pa. 1994) ("As an inmate, Jennings was required to submit to the lawful commands of corrections officers, and the use of physical force to resist such commands is not justified."), aff'd, 61 F.3d 897 (3rd Cir. 1995) (TABLE, No. 94-7370). Before he would be entitled to resort to force in such circumstances, Hart would have to adduce evidence that force was his only reasonable option. See Holt, 79 F.3d at 17 ("[W]e think it reasonable to require of defendants seeking a self-defense instruction that they first proffer evidence demonstrating a lack of reasonable alternatives to committing the crime."). The refusal to give the instruction as to Hart was not error.**3**

_____

**3** The following instruction was given at the appellants' trial:

> [I]f the officers used more force that they reasonably believed necessary under the circumstances, or their acts towards a defendant were prompted by some motive other than performance of their official duties then you may find that a defendant acted with justifiable or excusable cause if he resisted, provided that he too used no more force in resisting that he reasonably believed to be necessary under the circumstances.

III

In <u>United States v. Evans</u>, 917 F.2d 800, 806 (4th Cir. 1990), the trial judge refused to allow the defense to question the jury panel during <u>voir dire</u> about whether they would give special credence to the testimony of police officers because of the officers' positions. We held that this was reversible error because it denied the defendant a fair trial, and we remanded for a new trial. Hart and Harris attempt to apply the same analysis to the jury-instruction phase of the trial.

We are unconvinced that the rule in <u>Evans</u> should be expanded to include jury instructions. During voir dire, the trial court did ask the venire whether they could give the defendants as fair a trial as someone who was not an inmate. The appellants failed to request any additional questions. Accordingly, we find no abuse of discretion in the district court's refusal to give the credibility instruction. <u>See United States v. Russell</u>, 971 F.2d 1098, 1107 (4th Cir. 1992) (decision to give or refuse instruction within court's discretion), <u>cert. denied</u>, 113 S. Ct. 1013 (1993).

<u>AFFIRMED</u>

_____

In <u>United States v. Lewis</u>, 53 F.3d 29 (4th Cir. 1995), we held that a refusal to give an instruction is reversible error only if the instruction (1) was correct, (2) was not "substantially covered" by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. The government does not contend that this instruction "substantially covered" appellants' defense of self-defense.

7