**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4504**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

NICHOLAS YOUNG,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:16-cr-00265-LMB-1)

Submitted: May 22, 2020                    Decided: June 16, 2020

Before AGEE, KEENAN, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Nicholas D. Smith, DAVID B. SMITH, PLLC, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Gordon D. Kromberg, Assistant United States Attorney, Joseph Attias, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Nicholas Young was convicted of one count of attempting to provide material support to a designated foreign terrorist organization ("FTO"), in violation of 18 U.S.C. § 2339B, and two counts of attempting to obstruct justice, in violation of 18 U.S.C. § 1512(c), the district court sentenced him to 180 months' imprisonment for each count, to be served concurrently. Young appealed, and this Court vacated both obstruction convictions and remanded for resentencing. During resentencing, the district court imposed a 180-month sentence for the material support count. Young again appeals. For the reasons that follow, we affirm the judgment of the district court.

I.

Young's convictions stemmed from a counterterrorism investigation during which "Mo," an informant for the Federal Bureau of Investigation ("FBI"), expressed to Young an interest in joining the Islamic State of Iraq and the Levant ("ISIL")[1] in Syria. Young then advised Mo on how to travel abroad without being flagged by authorities and offered to send a text message to Mo after the supposed return date on his round-trip ticket in order to make it appear as if Young was expecting Mo's return. The two then maintained contact throughout the period Mo was supposedly traveling (though by this point an FBI agent was impersonating Mo), with Young sending the prearranged text in November 2014. In

---

[1] ISIL had been designated as an FTO by the Secretary of State.

December 2015, the FBI interviewed Young twice about Mo, and Young denied having current contact information for him.

In 2016, Mo told Young that ISIL needed more fighters and that codes from Google gift cards could be used to buy accounts for an encrypted messaging service to help contact recruits. In response, Young transmitted $245 in gift cards to Mo and, after confirming that Mo had received them, responded that he was "[g]lad" and would be disposing of the device used to communicate with Mo. J.A. 131. Young was then arrested for attempting to provide material support to an FTO. On the day of his arrest, agents searched Young's home and seized radical Islamist and Nazi paraphernalia, as well as weapons, ammunition, and body armor.

At trial, Young did not dispute sending the gift cards, but asserted an entrapment defense to the material support count. To establish Young's predisposition to commit the offense conduct, the Government introduced evidence of the seized items, over Young's objections. *See United States v. Young*, 916 F.3d 368, 376 (4th Cir. 2019). The jury convicted Young of the three aforementioned counts, and the district court sentenced Young to 180 months' imprisonment for each, to be served concurrently.[2]

---

[2] Prior to the first sentencing, the presentence investigation report ("PSR") determined that Young's offense level was forty-two and his criminal history category was VI, resulting in a Sentencing Guidelines range of 360 to 720 months. In reaching this range, the PSR applied: (1) a two-level enhancement under USSG § 2M5.3(b)(1)(E) for provision of material support with the knowledge it would be used to assist in the commission of a violent act; (2) a twelve-level enhancement under USSG § 3A1.4(a), which provides for such increases when the offense is a felony involving a federal crime of terrorism; and (3) a two-level enhancement pursuant to USSG § 3C1.1 for obstruction of justice. The PSR also declined to recommend a two-point decrease in offense level under USSG § 3E1.1 for

3

Young appealed his conviction and sentence. He disputed the admission of, *inter alia*, the items seized from his home and various threatening statements made to FBI informants about attacking federal buildings. We rejected these challenges, concluding that because Young had asserted an entrapment defense, he had put evidence of his predisposition to support ISIL—as illustrated by his support of other radical, violent ideologies—at issue. *Id.* at 375–82.

Young also asserted a *Brady*[3] claim, arguing that the Government had withheld or destroyed recordings of May and June 2014 conversations he had with Mo that likely contained predisposition evidence concerning Young's support, or lack thereof, for ISIL. We likewise rejected this challenge, concluding the record showed that such recordings were likely never made—and thus could not have been withheld—and that any *Brady* claim was therefore unavailing. *Id.* at 383–84.

Next, Young challenged his two convictions for attempting to obstruct an official proceeding. We determined that there was insufficient evidence to establish a nexus between Young's purportedly obstructive conduct—sending the text and lying during the FBI interviews—and a specific official proceeding that he could obstruct. Further, because such a proceeding was not reasonably foreseeable to Young, the elements of a § 1512(c)(2) offense had not been met. We therefore vacated those convictions. *Id.* at 384–89.

---

acceptance of responsibility. Young filed a number of objections, including two aimed at the § 2M5.3(b)(1)(E) and § 3C1.1 enhancements (but did not contest the § 3A1.4 increase). At sentencing, the district court overruled Young's objections and adopted the recommended range, noting the statutory maximum for each offense was 240 months' imprisonment.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

Finally, Young challenged the procedural reasonableness of his sentence. However, we declined to rule on this issue, instead concluding that because all three counts had been grouped together under USSG § 3D1.2(c) for sentencing purposes, the surviving material support conviction should be remanded for resentencing. *Id.* at 389 n.14.

Young requested a resentencing hearing, but the district court entered an order requiring counsel to show cause as to the purpose such a hearing would serve.[4] Young and the Government agreed that a full resentencing hearing should be held to allow for Guidelines corrections, to consider the 18 U.S.C. § 3553(a) factors, and to protect Young's right to a hearing and allocution. The court then held a resentencing hearing.[5]

Before resentencing, a new PSR calculated Young's Guidelines range at 360 months to life imprisonment, capped at the 240-month statutory maximum. The PSR applied the same adjustments and enhancements as the first sentencing, removing only the two-level increase for obstruction of justice under USSG § 3C1.1 because of this Court's vacatur of the obstruction counts.

At sentencing, the district court overruled all of Young's Guidelines objections. As relevant here, the court overruled Young's challenge to the applicability of the two-level

---

[4] The district court observed that "[b]ecause the sentence [on the material support count] was not affected by the Fourth Circuit opinion," it "kn[ew] of no reason why any hearing [was] needed, given that the only adjustment to the Judgment [would be] to vacate" the obstruction convictions. J.A. 58–59. Thus, it noted, "unless defense counsel [could] establish good cause for a hearing, the Judgment will be amended . . . without a hearing." J.A. 59.

[5] Young also moved to compel the Government to answer whether any recordings of Mo and Young's conversations through July 2014 were either destroyed or otherwise not produced to the defense. The district court denied the motion, concluding Young had "received all the discovery to which he was entitled[.]" J.A. 63.

5

enhancement under USSG § 2M5.3(b)(1)(E). In concluding this enhancement was properly applied, the district court rejected Young's claim that the gift cards were simply a gift to a friend, instead finding the evidence at trial showed that Young: believed that Mo was traveling to join ISIL; thought ISIL needed messaging accounts to solicit additional fighters; purchased the Google gift cards to obtain such accounts and thereby facilitate ISIL recruitment; and expressed approval upon hearing that Mo had received the gift cards. The district court likewise rejected Young's challenge to the applicability of the twelve-level § 3A1.4 enhancement for the same reasons discussed above.

After hearing argument from the parties and allocution from Young, the district court sentenced him to 180 months' imprisonment. In doing so, the court compared and contrasted other material support sentences; addressed the need for deterrence; considered the nature and circumstances of the offense; and expressed concern over the quantity of weapons, ammunition, and body armor found at Young's home, especially when viewed in light of certain statements he had made to FBI informants about how he could protect himself from the FBI and infiltrate federal buildings. The court also noted it was "still . . . not satisfied that there's a genuine belief that what you did in terms of getting these gift cards was all that wrong." J.A. 82.

Young again appeals, arguing that the district court erred by: (1) issuing the show cause order; (2) miscalculating the Guidelines range; (3) declining to apply a downward departure based on sentencing entrapment and denying his motion to compel; and (4) imposing a substantively unreasonable sentence. We address each contention in turn.

6

## II.

We consider first Young's argument that the show cause order contravened Rule 32(i). This Rule sets forth a number of duties with which a district court must comply at sentencing, including: (1) "verify[ing] that the defendant and the defendant's attorney have read and discussed the [PSR]"; (2) "allow[ing] the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence"; (3) ruling on "any disputed portion of the [PSR] or other controverted matter"; and (4) "before imposing sentence," "provid[ing] the defendant's attorney an opportunity to speak on the defendant's behalf" and "address[ing] the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(1)(A), (1)(C), (3)(B), (4)(A)(i)–(ii).

Young argues that by issuing the show cause order and thereby "presentencing" him, the district court contravened the Rule's requirements, and therefore vacatur of the new sentence is required. We disagree; even assuming the order violated Rule 32(i), any error was harmless in light of the district court's self-correction, as well as its thorough consideration at resentencing of the § 3553(a) factors, the Guidelines range, Young's objections and allocution, and the stated reasons for its new sentence. *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) (observing that "procedural errors at sentencing . . . are routinely subject to harmlessness review" (quoting *Puckett v. United States*, 556 U.S. 129, 141 (2009))); *see also United States v. Lockhart*, 58 F.3d 86, 89 (4th Cir. 1995) (declining to remand despite a Rule 32 violation where the defendant "failed to show that the error would have affected his sentence"). After all, Young received what he requested: a full

7

resentencing hearing. We therefore decline to vacate Young's sentence based on the district court's show cause order.

## III.

We turn next to Young's arguments that the district court miscalculated his Guidelines range by (1) declining to apply a two-level reduction for acceptance of responsibility and (2) applying a twelve-level enhancement for engaging in a terrorism-related felony, and that the district court also failed to consider all of the relevant § 3553(a) factors. In assessing whether a sentencing court properly calculated the Guidelines range, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018).

## A.

We first address the argument that the district court erred in failing to apply the two-level acceptance of responsibility reduction. As an initial matter, we observe that because Young failed to raise the issue below, we must review for plain error. *Lynn*, 592 F.3d at 577. Here, we discern no error in the court's refusal to apply the reduction. USSG § 3E1.1(a) provides for such a reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense[.]" However, Application Note 2 states that the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG § 3E1.1 cmt. n.2. The Note does provide a limited exception for a situation in which "a defendant may clearly demonstrate an

8

acceptance of responsibility . . . even though he exercises his constitutional right to a trial," including "where [he] goes to trial to assert and preserve issues that do not relate to factual guilt," such as an affirmative defense. *Id.*

Young claims the "PSR indicated [he] accepted responsibility before his trial—as a factual matter—for sending the Google cards." Opening Br. at 24 (citing J.A. 132, 153). But the portions of the PSR cited by Young provide only that "during the *presentence* interview the defendant and his counsel stated they did not dispute the defendant sent the gift cards," and continue on to observe that Young "put the Government to its burden of proof at trial" and that as a result, "he is not deserving of a reduction in his offense level for Acceptance of Responsibility." J.A. 132, 153 (emphasis added). Nowhere does the PSR state—or does the record otherwise indicate—that Young accepted responsibility before trial, as otherwise required by Application Note 2. Further, as the district court observed at sentencing, it was "not satisfied that there's a genuine belief that what you did in terms of getting these gift cards was all that wrong." J.A. 82. Therefore, his argument that he is entitled to the reduction is unavailing.[6]

## B.

Next, Young challenges the district court's application of the twelve-level enhancement under USSG § 3A1.4. This section (1) provides for such an increase to a

---

[6] To the extent Young asserts that his entrapment defense should not preclude a § 3E1.1 reduction, this argument fails for the same reasons. *See United States v. Holt*, 79 F.3d 14, 17 (4th Cir. 1996) (concluding there was no clear error where the district court "believed [the defendant's] affirmative defense was meritless and that his attempt to minimize his culpability was not an acceptance of responsibility").

defendant's base offense level and (2) elevates his criminal history to Category VI if his offense "is a felony that involved, or was intended to promote, a federal crime of terrorism[.]" USSG § 3A1.4. For purposes of the enhancement, the phrase "federal crime of terrorism" has the meaning specified in 18 U.S.C. § 2332b(g)(5). USSG § 3A1.4 cmt. n.1; *United States v. Hassan*, 742 F.3d 104, 148 (4th Cir. 2014).

In turn, a "federal crime of terrorism" under § 2332b(g)(5) has two components. First, it must be a violation of a statute listed in § 2332b(g)(5). Here, Young's § 2339B offense qualifies. Second, it must fulfill a specific-intent requirement—that is, the offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct[.]" 18 U.S.C. § 2332b(g)(5)(A).

However, the specific-intent requirement does not "automatically appl[y] to a [§ 2339B] material support conviction." *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008) ("*Chandia I*"). Rather, the evidence must be such that the court could "reasonably infer[] by a preponderance of the evidence that [the defendant] intended to advance [the group's terrorist] purpose in providing material support[.]" *United States v. Chandia*, 675 F.3d 329, 340 (4th Cir. 2012) ("*Chandia III*").[7] In turn, a court deciding

---

[7] Thus, in *Chandia III*, this Court ultimately affirmed the district court's finding that the specific-intent prong had been met when the defendant: chauffeured and provided administrative support to the leader of a Pakistani terror group knowing he was the leader of the group and was conducting business on behalf of the group; knew the group engaged in violent acts against the Indian government; and had expressed support for the group's goals. 675 F.3d at 340–41; *see also Hassan*, 742 F.3d at 149 (affirming the enhancement where the defendant: had cultivated relationships "based on [a] shared view of Islam, including the goal of waging violent jihad"; was "part of a loose group of conspirators whose goal was to kill non-Muslims"; had traveled to the Middle East to find "those who

10

whether to impose the enhancement in the context of a material support conviction must "resolve any factual disputes that it deems relevant" to the enhancement and then "identify the evidence in the record that supports its determination." *Hassan*, 742 F.3d at 148 (quoting *Chandia I*, 514 F.3d at 376).

Here, we conclude the enhancement was properly applied because the district court found that "the evidence in this case" made it clear that Young's actions were not just "an accommodation to a friend's request," J.A. 70, but rather demonstrated his support for and intent to advance ISIL's purposes. As the court observed, Young: knew that Mo was traveling to join ISIL; knew that Mo had relayed to him that ISIL needed funding to recruit additional fighters; purchased Google gift cards that were, to his knowledge, to be used for ISIL recruitment purposes; and expressed approval upon hearing that Mo had received the cards and would be using them for recruitment purposes. Thus, he specifically knew that the cards he was providing would be used to assist ISIL in soliciting additional *fighters*— leading to the inference that he knew the aid would be used to support its mission to overturn governments—and expressed support for that mission.[8] *See Hassan*, 742 F.3d at

---

could assist him . . . to join the mujahideen"; and advanced "jihadist propaganda" on the Internet); *United States v. Hammoud*, 381 F.3d 316, 326, 356 (4th Cir. 2004) (en banc), *vacated on other grounds*, 543 U.S. 1097 (2005) (affirming the enhancement where the defendant: had donated money to Hezbollah; had "close connections" with Hezbollah officials; and indicated that he was "well aware" of its "terrorist activities and goals and that he personally supported this aspect" of Hezbollah).

[8] Further, the Government presented evidence at trial that Young knew of and supported ISIL's purpose to "influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct[.]" 18 U.S.C. § 2332b(g)(5)(A). Specifically, the evidence seized from Young's home at the time of his arrest indicated that he was aware of and advocated ISIL's goal to overturn modern governmental systems and

11

149–50 (finding evidence of intent where one defendant was "trying to offer himself as a fighter" to the FTO, and where a co-defendant traveled "with the intent to solicit funds and personnel" to support the FTO in question). Based on this record, the district court was entitled to infer that Young: (1) knew of and supported ISIL's goals; (2) provided material support to ISIL; and (3) intended to advance those goals in providing such support. Thus, the district court's application of the enhancement was not in error.

C.

Young also contends that the district court failed to consider all of the relevant § 3553(a) factors in sentencing him. However, the record makes clear that the district court considered these factors. As an initial matter, it made a number of findings regarding the nature and circumstances of the offense. 18 U.S.C. § § 3553(a)(1). First, the district court noted that Young was "not here just for the gift cards," J.A. 80–81—indicating that it understood the offense conduct to be far more serious—and repeatedly observed that Young provided the gift cards to Mo knowing they were intended to facilitate ISIL recruitment, J.A. 70–71.[9] Second, the court found Young's position as a police officer to be an aggravating factor relevant to the nature and circumstances of the offense, observing

_____

establish a caliphate. For example, a number of pro-ISIL lectures found on Young's computer described ISIL's goals of overturning certain governments. Similarly, Young's computer revealed bookmarks to video-links concerning ISIL's execution of "spies," while his iPod contained ISIL "nasheeds" (or religious songs) endorsing fighting on behalf of the caliphate. Supp. J.A. 193, 196–97.

[9] And though Young protests that such actions were not violent and/or did not amount to joining an FTO, such acts are not a prerequisite for a substantial sentence for violating § 2339B. *See, e.g.*, *Hammoud*, 381 F.3d at 326–27 (observing defendant's monetary donation to Hezbollah resulted in § 2339B conviction).

12

that: (1) he was an "officer who on more than one occasion lied to other law enforcement officers"; and (2) "people who are in law enforcement who violate their oath of office by, among other things, engaging in illegal conduct and by lying to law enforcement, also have to recognize that there's penalties to be paid for that." J.A. 81–83. Finally, the court also made findings as to some of the context surrounding Young's offense, including: (1) his possession of 18,000 rounds of ammunition and body armor; and (2) his statements about how he would protect himself from the FBI and could attack federal buildings and courthouses. Thus, the court considered Young's past statements and arsenal as part of the nature and circumstances of the offense.

As for specific deterrence, *see* § 3553(a)(2)(B), the district court reiterated its earlier point that it was "not satisfied that there's a genuine belief that what you did in terms of getting these gift cards was all that wrong." J.A. 82. And as to general deterrence, the court concluded by noting that "[p]art of a court's sentence has to not only be to punish conduct, but it has to be to send messages[.]" J.A. 82. In turn, the court observed that "given the totality of the facts, it's very important for people to understand that if they intend to provide material support for a terrorist organization, at least in this district, there's a very harsh penalty to be paid." J.A. 82. The record thus clearly reflects the district court's consideration of the relevant § 3553(a) factors in sentencing Young.[10]

---

[10] In addition, the court engaged in an extensive discussion of any potential unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(6), by examining "several other cases that had been in this [district] . . . [involving] material support or attempted material support to known terrorist organizations[.]" J.A. 81.

IV.

We turn next to Young's two entrapment-related arguments. First, Young argues he was entitled to a downward departure at sentencing because he was entrapped into committing an offense subject to an elevated Guidelines range. Second, he argues that by denying the motion to compel, the district court erroneously omitted significant entrapment-related evidence. We address each contention in turn.

A.

At trial, Young presented an entrapment defense to the material support charge.[11] Although the jury rejected that defense, Young presented a similar argument at sentencing, contending that he was entitled to a downward departure because he was entrapped into committing an offense—the material support charge—subject to an elevated Guidelines range. The court rejected this argument, noting that Young was already predisposed to provide material support for ISIL before any contact with a Government agent given that he "was involved back . . . as early as 2010 with very problematic people," including others being investigated for their support of terrorist organizations and radical ideologies. J.A.

---

[11] To establish entrapment, a defendant must first demonstrate government inducement of the crime. *United States v. McLaurin*, 764 F.3d 372, 379 (4th Cir. 2014). Once the defendant presents evidence of government inducement, the burden shifts to the government to prove a defendant's predisposition to have engaged in the criminal conduct beyond a reasonable doubt. *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992). Predisposition "focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime," *Mathews v. United States*, 485 U.S. 58, 63 (1988) (internal quotation marks and citation omitted), prior to the defendant's first contact with a government agent, *Jacobson v. United States*, 503 U.S. 540, 549 (1992).

73. As the court observed, "the whole way in which law enforcement even started to look [into Young] was because he was picked up during" the investigation into another material support defendant. J.A. 73.

This Court has declined to address whether the sentencing entrapment theory has any legal viability.[12] To the extent the Court has considered such arguments, it has viewed them as requests for downward departures. *See United States v. Brown*, 69 F. App'x 175, 177 (4th Cir. 2003) (per curiam). In turn, this Court reviews any errors related to the failure to address a downward departure argument for abuse of discretion. *See United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017). In such instances, "[a] district court's decision not to depart from the Sentencing Guidelines is not reviewable unless the court mistakenly believed that it lacked authority to depart." *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007) (quoting *United States v. Carr*, 271 F.3d 172, 176 (4th Cir. 2001)).

As an initial matter, we conclude the district court's decision in this respect is unreviewable because it indicated that it knew it could depart downward by addressing and

---

[12] In *United States v. Jones*, we distinguished between the theories of sentencing entrapment and sentencing manipulation, while emphasizing that "our selection of terminology is done for the sake of clarity only and is not meant to indicate that we accept the viability of either theory." 18 F.3d 1145, 1152–55 (4th Cir. 1994). Under that caveat, we observed that sentencing entrapment is outrageous official conduct which overcomes the will of an individual who may have been predisposed to commit a lesser crime (such as dealing in minor quantities of drugs) and entraps him into committing a greater crime (such as dealing a far larger quantity) for the purposes of increasing the sentence of the entrapped defendant. In such instances, a valid claim of sentencing entrapment requires a showing of a lack of predisposition to commit the greater offense. *Id.* at 1152. Sentencing manipulation, by contrast, does not require a showing of lack of predisposition. Rather, sentencing manipulation is "outrageous government conduct that offends due process [and] could justify a reduced sentence." *Id.* at 1153.

15

making findings with respect to this objection, yet declined to do so. *United States v. Brewer*, 520 F.3d 367, 371 (4th Cir. 2008) ("We lack the authority to review a sentencing court's denial of a downward departure unless the court failed to understand its authority to do so.").

But even if this Court could review the district court's ruling, Young's claim would fail on the merits. He argues that the district court should have found the Government engaged in sentencing entrapment because: (1) he was entrapped as a matter of law; and (2) the Government "gam[ed] [the] sentencing factors [by] soliciting the [gift] cards" in 2016. Opening Br. at 41. That is, according to Young, although the Government could have arrested him in 2014 and 2015 for his alleged obstruction during the FBI interviews, the Government prolonged its investigation into 2016 so as to obtain a material support charge and thereby secure the § 3A1.4(a) enhancement.

Assuming sentencing entrapment is a viable legal theory, Young's argument nonetheless fails for two reasons. First, Young was not, as the jury determined when it rejected his affirmative defense, entrapped. At trial, the Government established Young's predisposition to commit the offense by giving evidence of: his association—beginning in 2010, before any Government contact—with others with radical views who expressed support for terrorist organizations; his longstanding interest in the parallels between Nazi and radical Islamist ideologies; and his travel to Libya in 2011 to associate with a militia group. *See United States v. Hackley*, 662 F.3d 671, 682 (4th Cir. 2011) ("Predisposition is not limited only to crimes specifically contemplated by the defendant prior to government suggestion." (internal quotation marks and citation omitted)).

16

Second, although Young assumes that the Government pursued the material support charge—despite already having two viable obstruction charges—to secure the § 3A1.4 enhancement, this assumption is facially incorrect because an obstruction charge will by itself support a § 3A1.4 enhancement. USSG § 3A1.4 cmt. n.2; *see also United States v. Benkahla*, 530 F.3d 300, 311–13 (4th Cir. 2008).[13]  Young's entrapment argument thus fails on both factual and conceptual grounds.

B.

Next, we turn to Young's contention that the district court erred in denying his motion to compel. This Court reviews the denial of a defendant's post-trial motion to compel for abuse of discretion. *United States v. Abu Ali*, 528 F.3d 210, 258 (4th Cir. 2008).

In his initial appeal, Young argued that because the Government had failed to produce audio recordings of six May and June 2014 conversations with the informant Mo, they had likely been destroyed. Young contended that these conversations constituted both Rule 16(a)(1)(B) [14] and *Brady* materials because the recordings likely concerned his early conversations with Mo about his support for ISIL (or lack thereof), a subject relevant to predisposition. This Court rejected Young's due process claims related to the purportedly missing recordings, concluding that the record indicated that such tapes were likely never

---

[13] Young has also failed to demonstrate that a departure based on sentencing manipulation is warranted. Here, the Government did not engage in "outrageous" conduct warranting a downward departure. *See Jones*, 18 F.3d at 1155.

[14] This Rule provides that the Government must disclose, upon request, "any relevant written or recorded statement by the defendant" if the "statement is within the [G]overnment's possession, custody, or control" and the Government knows it exists. Fed. R. Crim. P. 16(a)(1)(B).

made in the first instance. But before the resentencing hearing, Young moved to compel the Government to answer whether such recordings were destroyed or not produced.

Under the mandate rule, Young is precluded from re-raising this issue. "The 'mandate rule' is a specific application of the law of the case doctrine that prohibits a lower court from reconsidering on remand issues laid to rest by a mandate of the higher court." *United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013). As relevant here, the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Thus, "any issue conclusively decided by this [C]ourt on the first appeal is not remanded[.]" *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (quoting *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002)). Under these principles, Young cannot again raise the virtually identical *Brady*-centered argument that this Court previously rejected. We therefore conclude the district court did not abuse its discretion in denying the motion to compel.

V.

Finally, we consider the substantive reasonableness of the sentence imposed. This Court reviews the substantive reasonableness of a sentence under "a 'deferential abuse-of-discretion standard.'" *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). In doing so, the Court considers "the totality of the circumstances." *Gall*, 552 U.S. at 51. Because Young's below-Guidelines sentence

is presumptively reasonable, he can only prevail by showing the sentence is "unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014).

As an initial matter, Young claims the district court failed to consider the § 3553(a) factors in crafting his sentence. In support, Young repeats his argument that he merely sent gift cards to a friend (who turned out to be a Government agent) and again takes issue with the application of USSG § 3A1.4. Both arguments fail for the reasons discussed above.

Finally, Young asserts that the district court unconstitutionally considered his lawfully owned firearms in crafting its sentence. Young correctly notes that the district court cited "[t]he incredible amount of weaponry that was found in [his] home," J.A. 82, but disregards the context within which the court relied on that information. According to the district court, the relevant fact was not Young's possession of these items—which the court acknowledged were "legal to own"—but rather the "combination" of Young's arsenal of weaponry "with the conversations [he] had with [FBI] informants," which included statements about how he could protect himself from the FBI and infiltrate federal buildings to commit acts of violence. J.A. 82. As a result, the district court was fully entitled to consider this evidence as relevant to a number of § 3553(a) factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, general and specific deterrence, and the need to protect the public. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(C). In short, Young fails to point to any reversible error on the district court's part.

VI.

For the reasons set out above, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*